# EXHIBIT 6

# BROAD REACH CAPITAL, LP

## SUBSCRIPTION DOCUMENTS

## INVESTMENT PROCEDURES

Prospective investors should read the Confidential Memorandum for Broad Reach Capital, LP (the "Partnership"), the Limited Partnership Agreement of the Partnership as well as this booklet and the Anti-Money Laundering Supplement prior to subscribing to the Partnership.

If you are interested in purchasing an Interest (as defined herein), please complete all applicable pages as indicated below and promptly return this booklet and the Anti-Money Laundering Supplement to the General Partner to reserve an Interest in the Partnership. Please retain a copy of all documents for your files.

☐　　Investor Profile Form (page 11)

☐　　General Eligibility Representations (pages 13)

☐　　Form W-9 (page 21)

☐　　Signature Pages (pages 26)

☐　　Anti-Money Laundering Supplement (page S-1)

If you decide not to subscribe, please return the Confidential Memorandum for the Partnership, this booklet and the Anti-Money Laundering Supplement to the General Partner.

### WIRING INSTRUCTIONS

PNC Bank
ABA: 031000053
Account Name: BROAD REACH CAPITAL, LP
Account Number:　　0902

### IMPORTANT

1.　Please have your bank identify your name on the wire transfer.

2.　We recommend that your bank charge its wiring fees separately so that the amount you have elected to invest may be invested.

## CLEARED FUNDS MUST BE IN THE PARTNERSHIP'S ACCOUNT ONE BUSINESS DAY PRIOR TO THE DATE ON WHICH THE INVESTOR IS ADMITTED TO THE PARTNERSHIP.

# SUBSCRIPTION AGREEMENT

Broad Reach Capital, LP
c/o Broad Reach Partners, LLC
200 Four Falls, Suite 211
1001 Conshohocken State Road
West Conshohocken, PA  19428

**Re:**   **Broad Reach Capital, LP—Issuance of Limited Partnership Interests**

The undersigned (the "Investor") wishes to become a limited partner of Broad Reach Capital, LP, a Delaware limited partnership (the "Partnership"), and to purchase a limited partnership interest (an "Interest") in the Partnership upon the terms and conditions set forth herein, in the Confidential Private Placement Memorandum of the Partnership, as the same may be updated or modified from time to time (the "Memorandum"), and in the Limited Partnership Agreement of the Partnership, as the same may be amended from time to time (the "Partnership Agreement").  Capitalized terms used herein but not defined herein shall have the meanings assigned to them in the Partnership Agreement.

Accordingly, the Investor agrees as follows:

## I.   SUBSCRIPTION FOR AN INTEREST

**(A)**   The Investor agrees to become a limited partner of the Partnership (a "Limited Partner") and, in connection therewith, subscribes for and agrees to purchase an Interest in and to make a capital contribution (a "Capital Contribution") to the Partnership.  Payment in cleared funds for an Interest must be received prior to the closing date established by the Partnership for the subscription (the "Closing Date").  Subject to any legal or regulatory restrictions before the Closing Date, the Investor's payment (the "Payment") will be held by the Partnership in a non-interest bearing account.  The minimum initial subscription is $1,000,000, subject to the discretion of Broad Reach Partners, LLC (the "General Partner") to accept a lower amount.

**(B)**   The Investor understands and agrees that the Partnership reserves the right to reject this subscription for an Interest for any reason or no reason, in whole or in part, and at any time prior to its acceptance.  If the subscription is rejected, the Payment will be returned, without interest, promptly to the Investor and this subscription agreement (the "Subscription Agreement") shall have no force or effect.  Upon acceptance of this subscription by the Partnership, the Investor shall become a Limited Partner.

## II.   REPRESENTATIONS AND COVENANTS OF THE INVESTOR

**(A)**   The Investor will not sell or otherwise transfer the Interest without registration under the Securities Act of 1933, as amended (the "Securities Act"), or an exemption therefrom.  The Investor understands and agrees that it must bear the economic risk of its investment for an indefinite period of time (subject to limited rights of redemption as provided in the Partnership Agreement) because, among other reasons, the Interest has not been registered under the Securities Act or under the securities laws of certain states and, therefore, cannot be sold, pledged, assigned or otherwise disposed of unless it is so registered or an exemption from registration is available.  The Investor understands that the Partnership is under no obligation to register the Interest on its behalf or to assist it in complying with any exemption from

3

registration under the Securities Act.  Furthermore, the Interest can only be transferred with the prior authorization of the General Partner, which may be withheld in the General Partner's sole discretion. The Investor understands and acknowledges that the General Partner in its sole discretion may cause a compulsory redemption of all or any portion of the Investor's Interest in accordance with the Partnership Agreement.

(B)     The Investor has received, carefully read and understands the Partnership Agreement and the Memorandum outlining, among other things, the organization and investment objectives and policies of, and the risks and expenses of an investment in, the Partnership.  The Investor acknowledges that it has made an independent decision to invest in the Partnership and that, in making its decision to subscribe for an Interest, the Investor has relied solely upon the Memorandum, the Partnership Agreement and independent investigations made by the Investor.  The Investor is not relying on the Partnership, the General Partner, Bristol Advisors LLC, a Delaware limited liability company (the "Investment Manager"), or any other person or entity with respect to the legal, tax and other economic considerations involved in this investment other than the Investor's own advisers.  The Investor's investment in the Interest is consistent with the investment purposes, objectives and cash flow requirements of the Investor and will not adversely affect the Investor's overall need for diversification and liquidity.

The Investor acknowledges that it is not subscribing pursuant hereto for an Interest as a result of or pursuant to:  (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Partnership is not password protected) or broadcast over television or radio; or (ii) any seminar or meeting whose attendees, including the Investor, had been invited as a result of, or pursuant to, any of the foregoing.

The Investor has been provided an opportunity to obtain any additional information concerning the offering, the Partnership and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without unreasonable effort or expense, and has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to this investment.

(C)     The Investor has not reproduced, duplicated or delivered the Memorandum, the Partnership Agreement or this Subscription Agreement to any other person, except professional advisers to the Investor or as instructed by the General Partner.  Notwithstanding anything to the contrary herein or in the Partnership Agreement, the Investor (and each employee, representative or other agent of the Investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of (i) the Partnership and (ii) any of the Partnership's transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Investor relating to such tax treatment and tax structure.

(D)     The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the Investor's investment in the Partnership and is able to bear such risks, and has obtained, in the Investor's judgment, sufficient information from the General Partner to evaluate the merits and risks of such investment.  The Investor has evaluated the risks of investing in the Partnership, understands there are substantial risks of loss incidental to the purchase of an Interest and has determined that the Interest is a suitable investment for the Investor.

(E)     The Investor is aware of the limited provisions for transferability and redemption from the Partnership and has read the sections of the Memorandum entitled "Redemptions" and "Restrictions of Transferability."  The Investor has no need for liquidity in this investment, can afford a complete loss of the investment in the Interest and can afford to hold the investment for an indefinite period of time.  The Investor acknowledges that distributions, including, without limitation, the proceeds of redemptions, may be paid in cash or in kind.

(F)     The Investor is acquiring the Interest for its own account, for investment purposes only and not with a view toward distributing or reselling the Interest in whole or in part.

(G)     The Investor understands that:

(i)     No federal or state agency has passed upon the Interests or made any findings or determination as to the fairness of this investment; and

(ii)    The representations, warranties, agreements, undertakings and acknowledgments made by the Investor in this Subscription Agreement will be relied upon by the Partnership and the General Partner in determining the Investor's suitability as a purchaser of an Interest and the Partnership's compliance with federal and state securities laws, and shall survive the Investor's admission as a Limited Partner.

(H)     The Investor has all requisite power, authority and capacity to acquire and hold the Interest and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Investor in connection with the Investor's subscription for the Interest, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Investor, or violate any law, regulation or order, or any agreement to which the Investor is a party or by which the Investor may be bound.  If the Investor is an entity, the person executing and delivering each of such instruments on behalf of the Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Partnership or the General Partner, will furnish to the Partnership true and correct copies of any instruments governing the Investor, including all amendments thereto.

(I)     All information which the Investor has provided to the Partnership or the General Partner concerning the Investor, the Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of an Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date set forth herein.

(J)     The Investor understands that the value of a Limited Partner's capital account and redemptions therefrom under the Partnership Agreement, and the performance of the Partnership, may be based on unaudited and in some cases, estimated valuations of the Partnership's investments and that valuations provided in an Investor's account statement may be an unaudited, estimated value.

(K)     The Investor understands that the Partnership will not register as an investment company under the Investment Company Act of 1940, as amended (the "Company Act"), nor will it make a public offering of its securities within the United States.  The Investor understands that the Partnership relies on an exclusion from the definition of an investment company provided in section 3(c)(7) of the Company Act.  Consequently, each Limited Partner must be a "qualified purchaser" and "accredited investor," as

defined in Regulation D promulgated under the Securities Act. If the Investor is an entity, the Investor represents that (i) it was not formed for the purpose of investing in the Partnership, (ii) it does not invest more than 40% of its total assets in the Partnership, (iii) each of its beneficial owners participates in investments made by the Investor *pro rata* in accordance with its interest in the Investor and, accordingly, its beneficial owners cannot opt in or out of investments made by the Investor, and (iv) its beneficial owners did not and will not contribute additional capital (other than previously committed capital) for the purpose of purchasing the Interests.

(L)   If the Investor is a plan, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), or an entity whose underlying assets constitute "plan assets" under the U.S. Department of Labor's plan asset regulation at 29 CFR 2510.3-101, as modified by Section 3(42) of ERISA, (a "Plan"), the person executing this Subscription Agreement on behalf of the Plan (the "Fiduciary") represents and warrants to the partnership that:

i.   such person is a "fiduciary" of such Plan and trust and/or custodial account within the meaning of Section 3(21) of ERISA, Section 4975(e)(3) of the Code, or other similar laws, policies, ordinances, or regulations applicable to the Investor, and such person is authorized to execute the Subscription Agreement;

ii.   unless otherwise indicated in writing to the Partnership, the Plan is not a participant-directed defined contribution plan (such as a 401(k) plan) or a partnership or other investment vehicle (a) in which its partners or participants have or will have any discretion to determine whether or how much of the Investor's assets are invested in any investment made or to be made by the Investor or (b) that is otherwise an entity managed to facilitate the individual decisions of its beneficial owners to invest in the Partnership;

iii.   the Fiduciary has considered a number of factors with respect to the Plan's investment in the Interest and has determined that, in view of such considerations, the purchase of an Interest is consistent with the Fiduciary's responsibilities under ERISA or other similar laws, policies, ordinances, or regulations applicable to the Investor. Such factors include, but are not limited to:

(a)   the role such investment or investment course of action plays in that portion of the Plan's portfolio that the Fiduciary manages;

(b)   whether the investment or investment course of action is reasonably designed as part of that portion of the portfolio managed by the Fiduciary to further the purposes of the Plan, taking into account both the risk of loss and the opportunity for gain that could result therefrom;

(c)   the composition of that portion of the portfolio that the Fiduciary manages with regard to diversification;

(d)   the liquidity and current rate of return of that portion of the portfolio managed by the Fiduciary relative to the anticipated cash flow requirements of the Plan;

(e)   the projected return of that portion of the portfolio managed by the Fiduciary relative to the funding objectives of the Plan; and

(f)    the risks associated with an investment in the Partnership and the fact that the Investor has only limited redemption rights.

iv.    the investment in the Partnership has been duly authorized under, and conforms in all respects to, the documents governing the Plan and the Fiduciary;

v.    the Fiduciary is: (a) responsible for the decision to invest in the Partnership; (b) independent of the Partnership; and (c) qualified to make such investment decision;

vi.    (a) neither the General Partner nor any of its employees or affiliates: (i) is a "fiduciary" (within the meaning of Section 3(21) of ERISA and/or Section 4975(e)(3) of the Code) of the Investor in connection with the Plan's investment in the Interest; (ii) manages any part of the Investor's investment portfolio on a discretionary basis; (iii) regularly gives investment advice with respect to the assets of the Investor; (iv) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives information, recommendations or advice concerning investments which are used as a primary basis for the Investor's investment decisions; or (v) has an agreement or understanding, written or unwritten, with the Investor under which the latter receives individualized investment advice concerning the Investor's assets;

OR

(b) (i) the Fiduciary, who is independent of the General Partner, has studied the Memorandum and has made an independent decision to purchase Interests solely on the basis of such Memorandum and without reliance on any other information or statements as to the appropriateness of this investment for the Investor; and (ii) the Investor represents and warrants that neither the General Partner nor any of its employees or affiliates: (A) has exercised any investment discretion or control with respect to the Investor's purchase of Interests; (B) has authority, responsibility to give, or has given individualized investment advice with respect to the Investor's purchase of the Interests; or (C) is the employer maintaining or contributing to such Plan.

(M)    If applicable, the Investor has identified its status as a Benefit Plan Investor (as defined below) to the Partnership on pages 12.  If the Investor has identified to the Partnership on page 12 that it is not currently a Benefit Plan Investor, but becomes a Benefit Plan Investor, the Investor shall forthwith disclose to the General Partner promptly in writing such fact and also the percentage of such Investor's equity interests held by Benefit Plan Investors. For these purposes, a "Benefit Plan Investor," as defined under the Department of Labor Regulation Section 2510.3-101(f), as modified by Section 3(42) of ERISA, includes, but is not limited to, retirement and other employee benefit plans subject to ERISA and/or Section 4975 of the Code as well as entities whose underlying assets include plan assets by reason of investment by plans in such entities.

(N)    If the Investor is a Benefit Plan Investor, governmental pension plan, or foreign pension plan, then: (a) the purchase, holding and disposition of the Interest by the Investor will not result in a prohibited transaction under Section 406 of ERISA, Section 4975 of the Code, or other similar laws, policies, ordinances, or regulations applicable to the Investor for which an exemption is not available; (b) it has not solicited and has not received from the General Partner nor any of its employees or affiliates any evaluation or other investment advice on any basis in respect of the advisability of a subscription for an

Interest in light of the plan's assets, cash needs, investment policies or strategy, overall portfolio composition or plan for diversification of assets and it is not relying and has not relied on the General Partner nor any of its employees or affiliates for any such advice.

(O)   If the Investor is an insurance company and is investing the assets of its general account in the Partnership, it has identified on page 12 whether the assets underlying the general account constitute plan assets within the meaning of ERISA. The Investor agrees to promptly notify the General Partner if there is a change in the percentage of the general account's assets that constitute plan assets within the meaning of ERISA and shall disclose such new percentage ownership.

(P)   The Investor acknowledges, understands and agrees that the General Partner has authority to allocate transaction costs to obtain research and brokerage services, as set forth in the Memorandum. By signing this Subscription Agreement, the Investor expressly consents to any arrangement pursuant to which the General Partner obtains such products and services.

(Q)   The Investor acknowledges, or, if the Investor is acting as agent, representative or nominee for a subscriber (a "Beneficial Owner"), the Investor has advised the Beneficial Owner, that the Investment Manager may enter into agreements with placement agents providing for either: (i) a payment from the Investor to the particular placement agent; or (ii) a payment from the Investment Manager of a one–time or ongoing fee based upon the amount of the Capital Contribution of any Investor introduced to the Partnership by the agent.

(R)   The Investor understands that Andrew E. Hurni, Esq. acts as counsel to the Partnership, the General Partner, the Investment Manager and their affiliates. The Investor also understands that, in connection with this offering of Interests and subsequent advice to the Partnership, the General Partner, the Investment Manager and their affiliates, Mr. Hurni will not be representing investors in the Partnership, including the Investor, and no independent counsel has been retained to represent investors in the Partnership.

(S)   If the Investor is a "charitable remainder trust" within the meaning of Section 664 of the Internal Revenue Code of 1986, as amended (the "Code"), the Investor has advised the General Partner in writing of such fact and the Investor acknowledges that it understands the risks, including specifically the tax risks, if any, associated with its investment in the Partnership.

(T)   The Investor understands and agrees that, although the Partnership, the General Partner and the Investment Manager will use its reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Partnership, the General Partner and the Investment Manager may present this Subscription Agreement and the information provided in answers to it to such parties (*e.g.*, affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Investor's Capital Contributions including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Interests, the compliance with applicable law and any relevant exemptions thereto by the Partnership, the General Partner, the Investment Manager or its affiliates, or if the contents thereof are relevant to any issue in any action, suit or proceeding to which the Partnership, the General Partner, the Investment Manager or its affiliates are a party or by which they are or may be bound. The Partnership

may also release information about the Investor if directed to do so by the Investor, if compelled to do so by law or in connection with any government or self-regulatory organization request or investigation.

### III.   TAX INFORMATION

The Investor certifies under penalties of perjury that (A)(i) the Investor's name, taxpayer identification or social security number and address provided in the Investor Questionnaire are correct and (ii) the Investor will complete and return with this Subscription Agreement IRS Form W-9, Payer's Request for Taxpayer Identification Number and Certification, and (B)(i) the Investor is not a non-resident alien individual, foreign corporation, foreign partnership, foreign trust or foreign estate (as defined in the Code) and (ii) the Investor will notify the Partnership within 60 days of any change in such status. The Investor agrees to execute properly and provide to the Partnership in a timely manner any tax documentation that may be reasonably required by the General Partner in connection with the Partnership.

### IV.   GENERAL

(A)   The Investor agrees to indemnify and hold harmless the Partnership, its General Partner, the Investment Manager, each of their respective affiliates, and each other person, if any, who controls, is controlled by, or is under common control with, any of the foregoing, within the meaning of Section 15 of the Securities Act, against any and all loss, liability, claim, damage and expense whatsoever (including all expenses reasonably incurred in investigating, preparing or defending against any claim whatsoever) arising out of or based upon (i) any false representation or warranty made by the Investor, or breach or failure by the Investor to comply with any covenant or agreement made by the Investor, in this Subscription Agreement or in any other document furnished by the Investor to any of the foregoing in connection with this transaction or (ii) any action for securities law violations instituted by the Investor which is finally resolved by judgment against the Investor.  The Investor also agrees to indemnify the Partnership, the General Partner, the Investment Manager and their respective affiliates and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the Investor's assertion of lack of proper authorization from the Beneficial Owner to enter into this Subscription Agreement or perform the obligations hereof.

(B)   If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law.  Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.

(C)   If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Investor understands that the General Partner may terminate the interest of any Limited Partner from the Partnership as permitted under the Partnership Agreement.

### V.   TRUSTEE AGENT, REPRESENTATIVE OR NOMINEE

(A)   If the Investor is acting as trustee, agent, representative or nominee for a Beneficial Owner, the Investor understands and acknowledges that the representations, warranties and agreements made herein are made by the Investor:  (i) with respect to the Investor; *and* (ii) with respect to the Beneficial Owner.

The Investor represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Subscription Agreement.

(B) If the Investor will enter into a swap, structured note or other derivative instrument, the return from which is based in whole or in part on the return of the Partnership (the "Swap"), with a third party (a "Third Party"), the Investor represents and warrants that with respect to a Third Party entering into a Swap:   (i) the Third Party is authorized under its constitutional documents (*e.g.*, certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law (including U.S. and non-U.S. anti-money laundering laws and regulations) to enter into the Swap and would also be so authorized to invest directly into the Partnership; (ii) the Third Party has received and reviewed a copy of the Memorandum, the Partnership Agreement, and this Subscription Agreement; (iii) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the Investor is not an agent of the Partnership; and (iv) the Third Party is an "eligible contract participant" under the Commodity Futures Trading Commission (the "CFTC") rules and an "accredited investor" under Regulation D promulgated under the Securities Act. Nothing herein constitutes an agreement or statement by the Partnership as to the legality of a Swap or the suitability of a Swap for the Third Party.

## VI.   ADDITIONAL INFORMATION AND SUBSEQUENT CHANGES IN THE FOREGOING REPRESENTATIONS; LEGENDS

(A) The Partnership may request from the Investor such additional information as it may deem necessary to evaluate the eligibility of the Investor to acquire an Interest, and may request from time to time such information as it may deem necessary to determine the eligibility of the Investor to hold an Interest or to enable the General Partner to determine the Partnership's or the General Partner's compliance with applicable regulatory requirements or the Partnership's tax status, and the Investor agrees to provide such information as may reasonably be requested.

(B) The Investor agrees to notify the General Partner promptly in writing if there is any change with respect to any of the information or representations made herein and to provide the General Partner with such further information as the General Partner may reasonably require.

(C) This Subscription Agreement may be executed through the use of separate signature pages or in any number of counterparts. The counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties do not execute the same counterpart.

# INVESTOR PROFILE FORM

## ALL INVESTORS MUST COMPLETE THIS PAGE.

_____     ████████ 3502

Name of Investor (*Please Print or Type*)     Social Security Number/Tax I.D. Number

$_____

Amount of Subscription

Type of Investor—***Please check one***:

☐ Individual                          ☐ Registered Investment Company       ☐ Foundation
☒ Partnership                        ☐ Joint Tenants (with Rights of        ☐ Endowment
                                          Survivorship
☐ Corporation                       ☐ Tenants in Common
☐ Trust                              ☐ Individual Retirement Plan           ☐ Employee Benefit Plan
☐ Limited Liability Company         ☐ Charitable Remainder Trust           ☐ Keogh Plan

Full Mailing Address (***Exactly as it should appear on labels***):

☐ M███████████          ☐ Ms.          ☐ Miss          ☐ Dr.          ☐ Other_____
  ████████████
  ████████████████████
  ████████████

Telephone Number                      Fax Number

Residence (if an individual) or Principal Place of Business (if an entity) Address (*No P.O. Boxes Please, if any*):

_____
_____
_____

Telephone Number                      Fax Number

Address of Authorized Representative/Agent (*No. P.O. Box Please, if any*):

_____
_____
_____

Telephone Number                      Fax Number

Attention:____████████████_____
E-Mail Address:____into(@█████████.com_____
Agent E-Mail Address:____████████@████████.com_____

11

# INVESTOR PROFILE FORM

**COMMUNICATIONS TO INVESTOR**

Please send all communications to (***Please initial one***):

| | |
|---|---|
| _____ <br> *Initial* | Mailing Address |
| _____ <br> *Initial* | Residence or Principal Place of Business Address |
| _____ <br> *Initial* | Authorized Representative/Agent |
| ██████ <br> *Initial* | Investor Email Address: _info @ ██████.com_ |
| ██████ <br> *Initial* | Agent Email Address: ██████ @ ██████.com |

By executing this Subscription Agreement the Investor hereby consents to electronic delivery of all Partnership materials, including but not limited to, monthly NAV calculations, correspondence, annual reports and periodic updates to offering materials.

# GENERAL ELIGIBILITY REPRESENTATIONS

## PLEASE COMPLETE ALL APPROPRIATE ITEMS.

### I.   INVESTOR INFORMATION

**(A)**   Formation date of entity, if applicable: _June 2015_

**(B)**   If an entity, the Investor is organized under the laws of: _Delaware_

**(C)**   Was the Investor referred to the Partnership by a placement agent?  Yes☐  No ☑
If yes, please provide name of placement agent:_____

**(D)**   The Investor hereby warrants and represents that:

*(Please initial one and complete blanks)*

　　　　　1.   If the Investor is an employee benefit plan, an endowment, a
*Initial*        foundation, a corporation, a partnership, a limited liability
　　　　　    company, a trust or other legal entity, it is:

　　　　　    organized under the laws of: _Delaware_
　　　　　    and has its principal place of business in : _PA_

　　　　　2.   If beneficial ownership of the Investor is held by an individual
*Initial*        (or an Individual Retirement Account, Keogh Plan, or other
　　　　　    self-directed defined contribution plan), such individual is of
　　　　　    legal age and is a resident of:

　　　　　    _____

**(E)**   The Investor _____ (is) _____ (is not) *(please initial one)* a "Benefit
Plan Investor" (as defined in Section II(N) of this Subscription Agreement).

(ii)  The Investor ____ (is) ____ (is not) *(please initial one)* subject to any rules or
regulations similar to the fiduciary responsibility provisions of ERISA, and/or the
prohibited transactions provisions of Section 4975 of the Code.

# GENERAL ELIGIBILITY REPRESENTATIONS

**(F)**   If the Investor is an entity, the Investor hereby certifies to either 1 or 2 below:

*(Please initial one)*

## GENERAL ELIGIBILITY REPRESENTATIONS

*Initial*

1.  If the Investor is a corporation, partnership, limited liability company, trust or other entity, less than 25% of the value of each class of equity interests in the Investor is held by Benefit Plan Investors (as defined in Section II(N) of this Subscription Agreement).

_____
*Initial*

2.  Twenty-five percent (25%) or more of the value of any class of equity interests in the Investor is held by Benefit Plan Investors and no more than ____% of its value of any class of equity interests constitute or during the investment will constitute plan assets within the meaning of ERISA;

and

the Investor, _____ (is) _____ (is not) *(please initial one)* subject to the fiduciary responsibility provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

**(G)**  If the Investor is an insurance company, the Investor hereby certifies to either 1 or 2 below:

_____
*Initial*

1.  The Investor is an insurance company investing the assets of its general account in the Partnership but none of the underlying assets of the Investor's general account constitutes plan assets within the meaning of ERISA.

_____
*Initial*

2.  The Investor is an insurance company investing in the Partnership with the general account assets and a portion of the underlying assets of the Investor's general account constitutes plan assets within the meaning of ERISA; and no more than ____% of its general account constitute or during the investment will constitute plan assets within the meaning of ERISA; and

**(H)**  If the Investor is a governmental or foreign pension plan, the Investor certifies:

_____
*Initial*

That the Plan is not, as of the date hereof, subject to a law, policy, ordinance, or regulation that could cause the underlying assets of the Partnership to be subject to laws that are similar to the fiduciary standards of care under ERISA and/or the prohibited transactions rules under Section 406 of ERISA or Section 4975 of the Code; and the Investor agrees to promptly notify the General Partner if there is a change in the Investor's law with regard to this representation; and

**(I)**  If the investor is exempt from U.S. federal income tax, please indicate the basis for the exemption:_.

14

# GENERAL ELIGIBILITY REPRESENTATIONS

## II.    ACCREDITED INVESTOR STATUS

The Investor certifies that the Investor is an "accredited investor" as defined in Regulation D promulgated under the Securities Act because:

*(Please initial as appropriate)*

### (A)    Individuals

*Initial*     1.    The Investor has an individual net worth, or joint net worth with his or her spouse, in excess Initial of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home,* home furnishings and automobiles, over total liabilities; or

*Initial*     2.    The Investor had individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.**

### (B)    Corporations, Foundations, Endowments, Partnerships or Limited Liability Companies


*Initial*     1.    The Investor has total assets in excess of $5,000,000 and was not formed for the specific purpose of acquiring the Interests offered; or

---

\*        Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property. "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

\*\*      For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code"), received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

*Initial*     2.    Each of the Investor's equity owners is an accredited investor for either of the following Initial reasons:

## GENERAL ELIGIBILITY REPRESENTATIONS

(a)      the equity owner of the Investor has an individual net worth, or joint net worth with his or her spouse, in excess of $1,000,000.  As used herein, "net worth" means the excess of total assets at fair market value, including home, [*] home furnishings and automobiles, over total liabilities, or

(b)      the equity owner of the Investor has individual income (exclusive of any income attributable to his or her spouse) of more than $200,000 in each of the past two years, or joint income with his or her spouse of more than $300,000 in each of those years, and reasonably expects to reach the same income level in the current year.[**]  *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

**(C)**          **Employee Benefit Plans**

_____
*Initial*

1.      The Investor is an employee benefit plan within the meaning of ERISA, and the decision to invest in the Partnership was made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company or registered investment adviser.  The name of such plan fiduciary is: _____.

_____
*Initial*

2.      The Investor is an employee benefit plan within the meaning of ERISA and has total assets Initial  in excess of $5,000,000; or

_____
*Initial*

3.      The Investor is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, and has total assets in excess of $5,000,000.

---

[*]      Notwithstanding anything to the contrary herein, for purposes of determining "net worth," the principal residence owned by an individual shall be valued either at: (i) cost, including the cost of improvements, net of current encumbrances upon the property; or (ii) the appraised value of the property as determined upon written appraisal used by an institutional lender making a loan to the individual secured by the property, including the cost of subsequent improvements, net of current encumbrances upon the property.  "Institutional lender" means a bank, savings and loan company, industrial loan company, credit union or personal property broker or a company whose principal business is as a lender secured by real property and which has such loans receivable in the amount of $2,000,000 or more.

[**]      For purposes of this Subscription Agreement, individual income means adjusted gross income, as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, increased by the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (i) the amount of any tax-exempt interest income under Section 103 of the Code, received; (ii) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (iii) any deduction claimed for depletion under Section 611 et seq. of the Code; (iv) amounts contributed to an Individual Retirement Account (as defined in the Code) or Keogh retirement plan; (v) alimony paid; and (vi) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

**(D)**          **Individual Retirement Accounts, Keogh Plans and Other Self-Directed**

# GENERAL ELIGIBILITY REPRESENTATIONS

### Defined Contribution Plans

_____
*Initial*

The Investor is an individual retirement account, Keogh Plan or other self-directed defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account and the investing participant is an accredited investor because such participant has a net worth of at least $1,000,000 or has had an individual income of at least $200,000 (or a joint income with spouse of at least $300,000) in each of the last two years and reasonably expects to reach the same income level in the current year. *The General Partner, in its sole discretion, may request information regarding the basis on which such participants are accredited.*

**(E)**         **Section 501(c)(3) Organizations**

_____
*Initial*

The Investor is an organization described in Section 501(c)(3) of the Code of 1986, was not formed for the specific purpose of acquiring the Interests offered and has total assets in excess of $5,000,000.

**(F)**         **Trusts**

_____
*Initial*

1.    The Investor has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring the Interests offered and its purchase is directed by a sophisticated person. *As used in the foregoing sentence, a "sophisticated person" is one who has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of the prospective investment;* or

_____
*Initial*

2.    The Investor is:  (a) a bank as defined in Section 3(a)(2) of the Securities Act, a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act; (b) acting in a fiduciary capacity; and (c) subscribing for the purchase of the interests being offered on behalf of a trust account or accounts; or

_____
*Initial*

3.    The Investor is a revocable trust which may be amended or revoked at any time by the grantors thereof and all of the grantors are accredited investors as described herein. *The General Partner, in its sole discretion, may request information regarding the basis on which such equity owners are accredited.*

**(G)**         **Banks, Savings and Loans and Similar Institutions**

_____
*Initial*

The Investor is a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association, or other institution as defined in Section 3(a)(5)(A) of the Securities Act acting in its individual capacity.

## GENERAL ELIGIBILITY REPRESENTATIONS

**(H)**      **Insurance Companies**

_____      The Investor is an insurance company as defined in Section 2(13) of the
*Initial*      Securities Act.

**(I)**      **Other**

_____      The Investor is an executive officer or director of the General Partner or an
*Initial*      IRA for their benefit.


## III.   SUPPLEMENTAL DATA FOR ENTITIES

If the Investor is not a natural person, furnish the following supplemental data (natural persons may skip this Section of the Investor Questionnaire):

| | 1. | *Legal form of entity (trust, corporation, partnership, limited liability company, benefit plan, etc.):* |
|---|---|---|
| ▓▓▓<br>Initial | | Partnership<br><br>Jurisdiction of organization:  Delaware |
| ▓▓▓<br>*Initial* | 2. | *Was the Investor organized for the specific purpose of acquiring interests?*<br><br>☐ Yes   ☒ No |
| ▓▓▓<br>*Initial* | 3a. | *Is the Investor a grantor trust, a partnership or an S-Corporation for U.S. federal income tax purposes?*<br><br>☒ Yes   ☐ No |
| ▓▓▓<br>*Initial* | 3b. | *If "Yes" to question 3a above, please indicate whether or not:*<br><br>*(i) more than 50 % of the value of the ownership interest of any beneficial owner in the Investor is (or may at any time during the term of the Partnership be) attributable to the Investor's (direct or indirect) interest in the Partnership; or*<br><br>☐ Yes   ☒ No<br><br>*(ii) it is a principal purpose of the Investor's participation in the Partnership to permit the Partnership to satisfy the 100 partner limitation contained in U.S. Treasury Regulation Section 1.7704-1(h)(3).* |

## GENERAL ELIGIBILITY REPRESENTATIONS

| | | |
|---|---|---|
| | | ☐ Yes   ☒ No |
| ████<br>*Initial* | 4. | *Are shareholders, partners or other holders of equity or beneficial interests in the Investor able to decide individually whether or participate, or the extent of their participation, in the Investor's investment in the Partnership (i.e., can shareholders, partners or other holders of equity or beneficial interests in the Investor determine whether their capital will form part of the capital invested by the Investor in the Partnership)?*<br><br>☐ Yes   ☒ No |
| _____<br>*Initial* | 5. | *If the Investor's tax year ends on a date other than December 31, please indicate such date below:*<br><br>_____ |
| ████<br>*Initial* | 6. | *What percentage of the Investor is owned by non-United States persons or entities?*   _____O_____ % |
| ████<br>*Initial* | 7. | *Is the Investor (a) a trust any portion of which is treated (under subpart E of part I of subchapter J of chapter 1 of subtitle A of the Code) as owned by a natural person (e.g., a grantor trust), (b) an entity disregarded for U.S. federal income tax purposes and owned (or treated as owned) by a natural person or a trust described in clause (a) of this sentence (e.g., a limited liability company with a single member), (c) an organization described in Section 401(a), Section 501(c)(17) or Section 509(a) of the Code, or (d) a trust permanently set aside or to be used for a charitable purpose?*<br><br>☐ Yes   ☒ No |

| Form **W-9**<br>(Rev. October 2007)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give form to the requester. Do not send to the IRS** |
| --- | --- | --- |

Name (as shown on your income tax return)

████████████

Business name, if different from above

Check appropriate box: ☐ Individual/ Sole proprietor   ☐ Corporation   ☑ Partnership   ☐ Exempt payee

☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ ------

☐ Other (see instructions) ▶

Address (number, street, and apt. or suite no.)

████████████████

City, state, and ZIP code

████████████████

Requester's name and address (optional)

List account number(s) here (optional)

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a *TIN* on page 3.

**Social security number**

**or**

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Employer identification number**

████████ 3502

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1.   The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2.   I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.   I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

| **Sign Here** | Signature U.S. person ████████████ | Date ▶ 7/28/16 | of |

20

Form W-9 (Rev. 10-2007)

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1.   Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2.   Certify that you are not subject to backup withholding, or

3.   Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

*   An individual who is a U.S. citizen or U.S. resident alien,

*   A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

*   An estate (other than a foreign estate), or

*   A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

*   The U.S. owner of a disregarded entity and not the entity,

*   The U.S. grantor or other owner of a grantor trust and not the trust, and

*   The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1.   The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2.   The treaty article addressing the income.

3.   The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4.   The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1.   You do not furnish your TIN to the requester,

2.   You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4.   The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5.   You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

## Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the

name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** Check the "Limited liability company" box only and enter the appropriate code for the tax classification ("D" for disregarded entity, "C" for corporation, "P" for partnership) in the space provided.

For a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

For an LLC classified as a partnership or a corporation, enter the LLC's name on the "Name" line and any business, trade, or DBA name on the "Business name" line.

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note.** You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1.   An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2.   The United States or any of its agencies or instrumentalities,

3.   A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4.   A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5.   An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6.   A corporation,

7.   A foreign central bank of issue,

8.   A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9.   A futures commission merchant registered with the Commodity Futures Trading Commission,

10.   A real estate investment trust,

11.   An entity registered at all times during the tax year under the Investment Company Act of 1940,

12.   A common trust fund operated by a bank under section 584(a),

13.   A financial institution,

14.   A middleman known in the investment community as a nominee or custodian, or

15.   A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 7[2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, and payments for services paid by a federal executive agency.

## Part I.   Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting www.irs.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt payees, see Exempt Payee on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

    **1.    Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

    **2.    Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

    **3.    Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

    **4.    Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

    **5.    Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1.  Individual | The individual |
| 2.  Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3.  Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4.  a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
|     b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5.  Sole proprietorship or disregarded entity owned by an individual | The owner[3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6.  Disregarded entity not owned by an individual | The owner |
| 7.  A valid trust, estate, or pension trust | Legal entity[4] |
| 8.  Corporate or LLC electing corporate status on Form 8832 | The Corporation |
| 9.  Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the second name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity

itself is not designated in the account title.) Also see Special Ivies for partnerships on page 1.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

    Call the IRS at 1-800-829-1040 if you think your identity has been used inappropriately for tax purposes.

    Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

    The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

    If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS personal property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: spam@uce.gov or contact them at *www.consumergovfidtheft* or 1-877-IDTHEFT(438-4338).

    Visit the IRS website at *www.irs.gov* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA, or Archer MSA or HSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, the District of Columbia, and U.S. possessions to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 28% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply

## SIGNATURE PAGES

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that:

1.  the undersigned has carefully read and is familiar with this Subscription Agreement and the Partnership Documents;

2.  the information contained herein is complete and accurate and may be relied upon; and

3.  the undersigned agrees that the execution of this signature page constitutes the execution and receipt of this Subscription Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement this _28_ day of _July_, 20_16_.

| INDIVIDUALS | ENTITIES |
|---|---|
| | ██████████ |
| _____ | _____ |
| Signature | Print Name of Entity |
| | By: ████████████ |
| _____ | Authorized Signature |
| Print Name | |
| | ██████████   - Managing Member |
| _____ | _____ |
| Additional Investor Signature | Print Name and Title |

_____
Print Name

*Name of Trustees or Other Fiduciaries Exercising Investment Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

25

## SIGNATURE PAGES

### Agreement of Custodian of Individual Retirement Account

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this subscription.

By: _____

Signature of Authorized Signatory      Name of Custodian *(Please Type or Print)*

_____

Name of Authorized Signatory *(Please Type or Print)*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### FOR INTERNAL USE ONLY
#### To be completed by Broad Reach Capital, LP

_____

SUBSCRIPTION ACCEPTED
AS TO $ *2,000,000.00*

**BROAD REACH CAPITAL, LP**
By:  Broad Reach Partners, LLC

By: *Brenda Smith*

Date: *September 7*, 20*16*

## BROAD REACH CAPITAL, LP (THE "PARTNERSHIP")

### Anti-Money Laundering Supplement

You (the "Investor") must complete this supplement (the "Anti-Money Laundering Supplement") in order to become a limited partner in the Partnership. Your subscription agreement will not be deemed complete, and you will not be deemed a limited partner of the Partnership, regardless of whether you have already wired funds, until all of the required documentation listed below is received by the General Partner. For additional information, please contact Brenda Smith at (610) 671-2346.

### IV. PAYMENT INFORMATION

(a) Name of Investor: ▮▮▮▮▮▮▮▮▮▮▮▮

(b) Name of the bank from which your payment to the Partnership is being wired (the "Wiring Bank"): _Wells Forgo Bank_

|  |  | YES | NO |
|---|---|---|---|
| (c) | Is the Wiring Bank located in a FATF Country*? | ☑ | ☐ |

If yes, please answer question (d) below.

If no, please provide the information described in Item II below.

| (d) | Are you a customer of the Wiring Bank? | ☑ | ☐ |
|---|---|---|---|

If yes, you may skip Item II below.

If no, please provide the information described in Item II below.

You must wire the payment from an account in your name. If the General Partner is unable to verify your answers above through confirmation from Wiring Bank or SWIFT message, you will be required to provide the information described in Item II below.

---

\*　As of the date hereof, countries that are members of the Financial Action Task Force on Money Laundering (each, a "FATF Country") are: Argentina, Australia, Austria, Belgium, Brazil, Canada, China, Denmark, European Commission, Finland, France, Germany, Greece, Gulf Co-operation Council, Hong Kong, Iceland, Ireland, Italy, Japan, Kingdom of the Netherlands, Luxembourg, Mexico, New Zealand, Norway, Portugal, Russian Federation, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom and the United States.

## V.   <u>ADDITIONAL INFORMATION</u>

*Note: This section applies only to investors who responded "No" to question I(c) or I(d) above.*

**The following materials must be provided to the General Partner:**

**For Individuals**

☐   A certified or notarized copy of a government issued form of picture identification (*e.g.*, passport).

☐   Certified proof of current address (*e.g.*, copy of a current residential utility bill).

**For Fund of Funds**

☐   A certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐   An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐   A completed copy of <u>Exhibit B</u> certifying that the entity has adequate anti-money laundering policies and procedures in place that are consistent with all applicable anti-money laundering laws and regulations, including, to the extent applicable, the USA PATRIOT Act and OFAC (as defined below).

☐   A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in a FATF Country certifying that the prospective investor maintains an account at such bank/brokerage firm and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

☐   If the prospective investor is a publicly traded company, the information described above in "For Individuals" must be provided for the lesser of (i) two or (ii) all of, the directors of the company.

☐   Certified copy of Certificate of Incorporation, Certificate of Formation, Certificate of Registration, Memorandum and Articles of Association, signed LLC Agreement, signed Operating Agreement and signed Limited Partnership Agreement, as applicable.

☐   Identification required for individuals must be provided for at least two directors, partners or members, as applicable.

**For All Entity Investors**

☐    A certified certificate of due formation and organization and continued authorization to conduct business in the jurisdiction of its organization (*e.g.*, certificate of good standing).

☐    An incumbency certificate attesting to the title of the individual executing the Anti-Money Laundering Supplement on behalf of the prospective investor (a sample Incumbency Certificate is attached hereto as <u>Exhibit A</u>).

☐    A letter of reference from a local office of a reputable bank or brokerage firm which is incorporated, or has its principal place of business located, in a FATF Country certifying that the prospective investor maintains as account at such bank/brokerage firm for a length of time and containing a statement affirming the prospective investor's integrity (a sample Letter of Reference is attached hereto as <u>Exhibit C</u>).

☐    If the prospective investor is a privately-held entity, a completed copy of <u>Exhibit D</u> listing the name of each person who directly, or indirectly through intermediaries, is the beneficial owner of 25% or more of any voting or non-voting class of equity interests of the prospective investor.

☐    If the prospective investor is a trust, a completed copy of <u>Exhibit E</u> listing the current beneficiaries of the trust that have, directly or indirectly, 25% or more of any interest in the trust, the settlor of the trust and the trustees.

☐    If the prospective investor is a publicly traded company, the information described above in "For Individuals" must be provided for the lesser of (i) two or (ii) all of, the directors of the company.

☐    Certified copy of Certificate of Incorporation, Certificate of Formation, Certificate of Registration, Memorandum and Articles of Association, signed LLC Agreement, signed Operating Agreement and signed Limited Partnership Agreement, as applicable.

☐    Identification required for individuals must be provided for at least two directors, partners or members, as applicable.

## VI.  REPRESENTATIONS AND COVENANTS OF THE INVESTOR

**You should check the website of the U.S. Treasury Departments Office of Foreign Assets Control ("OFAC") at <http://www.treas.gov/ofac> before making the following representations.**

(A)  The Investor represents that the amounts contributed by it to the Partnership were not directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.

Federal regulations and executive orders administered by U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") prohibit among other things, the engagement in transactions with, and the provisions of services to, certain foreign countries, territories, entities and individuals.** The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at <http://www.treas.gov/ofac>. In addition, the programs administered by OFAC ("OFAC Programs" prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists.

The Investor represents and warrants that, to the best of its knowledge, none of:

(1)  the Investor;

(2)  any person controlling or controlled by the Investor;

(3)  if the Investor is a privately held entity, any person having a beneficial interest in the Investor; or

(4)  any person for whom the Investor is acting as agent or nominee in connection with this investment

is a country, territory, individual or entity named on an OFAC list, nor is a person or entity prohibited under the OFAC Programs.

Please be advised that the Partnership may not accept any amount from a prospective investor if it cannot make the representation set forth in the preceding paragraph. If an existing Investor can no longer make these representations, the Partnership may require the redemption of such Investor's interests in the Partnership.

(B)  The Investor agrees to notify the Partnership promptly in writing should the Investor become aware of any change in the information set forth in these representations. The Investor is advised that, by law, the Partnership may be obligated to "freeze the account" of such Investor, either by prohibiting additional investments from the Investor, declining any redemption requests and/or segregating the assets in the account in compliance with governmental regulations, and the Partnership may also be required to report such action and

---

** These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs.

to disclose the Investor's identity to OFAC or other applicable governmental and/or regulatory authorities.  The Investor further acknowledges that the Broad Reach Partners, LLC (the "General Partner") may, by written notice to the Investor, suspend the payment of redemption proceeds payable to such Investor if the General Partner reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Partnership, the Investment Manager or any of the Partnership's other service providers.

(C)     The Investor represents and warrants that, to the best of its knowledge, none of:

   (1)     the Investor;

   (2)     any person controlling or controlled by the Investor;

   (3)     if the Investor is a privately held entity, any person having a beneficial interest in the Investor;

   (4)     any person for whom the Investor is acting as agent or nominee in connection with this investment

is a senior foreign political figure,[***]or any immediate family member[****]or close associate[*****] of a senior foreign political figure as such terms are defined in the footnotes below.

(D)     The Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Investor's investment in the Partnership was originally remitted, unless the General Partner, in its sole discretion, agrees otherwise.

(E)     The Investor agrees that, upon the request of the Partnership or the General Partner, it will provide such information as the Partnership or the General Partner require to satisfy applicable anti-money laundering laws and regulations, including, without limitation, the Investor's anti-money laundering policies and procedures, background documentation relating to its directors, trustees, settlors and beneficial owners, and audited financial statements, if any.

---

[***]   A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military or judicial branches of a non-U.S. government (whether elected or not), a senior official of a major non-U.S. political party, or a senior executive of a non-U.S. government-owned corporation. In addition, a "senior foreign political figure" includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

[****]   "Immediate family" of a senior foreign political figure typically includes the figure's parents, siblings, spouse, children and in-laws.

[*****]   A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial U.S. and non-U.S. financial transactions on behalf of the senior foreign political figure.

# SIGNATURE PAGES

**ALL INVESTORS MUST COMPLETE THIS SECTION.**

The undersigned hereby represents that: (i) the information contained herein is complete and accurate and may be relied upon; and (ii) the anti-money laundering/OFAC representations contained herein are true and correct.

IN WITNESS WHEREOF, the undersigned has executed this Anti-Money Laundering Supplement this _28_ day of ___July___, 20_16_.

INDIVIDUALS                                ENTITIES

_____                _____
Signature                                  Print Name of Entity

_____                By:_____
Print Name                                 Authorized Signature

_____                _____ - *Managing Member*
Additional Investor Signature              Print Name and Title

_____
Print Name

### *Name of Trustees or Other Fiduciaries Exercising Investment Discretion with Respect to Benefit Plan or Trust*

| *Signature* | *Printed Name* | *Title* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## AGREEMENT OF CUSTODIAN OF INDIVIDUAL RETIREMENT ACCOUNT

The undersigned, being the custodian of the above named individual retirement account, hereby accepts and agrees to this Anti-Money Laundering Supplement.

By:_____        _____
Signature of Authorized Signatory            Name of Custodian ( Please Type or Print)

_____
Name of Authorized Signatory (Please Type or Print)

<u>**EXHIBIT A**</u>

# FORM OF INCUMBENCY CERTIFICATE

The undersigned, being the *Managing member* of ██████████,
*Insert Title*       *Insert Name of Entity*

a *Partnership* organized under the laws of *Delaware*
*Insert Type of Entity*       *Insert Jurisdiction of Organization*

(the "Company"), does hereby certify on behalf of the Company that the persons named below are directors and/or officers of the Company and that the signature at the right of said name, respectively, is the genuine signature of said person and that the persons listed below are each an authorized signatory for the Company.

| Name | Title | Signature |
|------|-------|-----------|
| ██████ | *Managing Member* | ██████ |
| ██████ | *Manageing Member* | ██████ |
| ██████ | *Employee - Analyst* | ██████ |

IN WITNESS WHEREOF, the undersigned has hereunto set his hand as of the ____ day of _____, 20__.

By: _____
    *Signature of Signatory #1*
    Name:
    Title:

THE UNDERSIGNED, _____, a duly authorized _____
                   *Insert Name of Signatory #2*                    *Insert Title*

of the Company, does hereby certify that _____ is a duly authorized
                                         *Insert Name of Signatory #1*

officer of _____ and that the signature set forth above is [his][her] true and
           *Insert Name of Company*

correct signature.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the ____ day of _____, 20__.

By: _____
    *Signature of Signatory #2*
    Name:
    Title:

**COUNTERPART SIGNATURE PAGE TO
THE LIMITED PARTNERSHIP AGREEMENT OF
BROAD REACH CAPITAL, LP**

**Dated February 15, 2016**

IN WITNESS WHEREOF, the undersigned has executed this counterpart signature page
to the Limited Partnership Agreement (the "Agreement") of Broad Reach Capital, LP.
Upon acceptance by the General Partner, the undersigned shall be admitted as a Limited
Partner and hereby authorizes this signature page to be attached to a counterpart of such
Agreement executed by the General Partner.

[NAME]

By:

Name:

Title: _Managing Member_

Preferred address for receiving communications:

Attention:

Telephone:

Fax:

Type of Entity (e.g., individual, corporation, estate, trust,
partnership, exempt organization, nominee, custodian):

_Partnership_

Federal Tax Identification No.:

_3502_

35