# EXHIBIT 8

**BROAD REACH CAPITAL, LP**
200 Four Falls, Suite 211
1001 West Conshohocken State Road
West Conshohocken, PA 19428

**SIDE LETTER AGREEMENT**

December 1, 2016

Investor LP-BJB Trust, LLC, a Florida limited liability company
Trustee of the ▮▮▮▮▮ Revocable Trust UA Dated March 25, 2008
Sole Member ("▮▮▮")

▮▮▮▮▮ Trustee of the
▮▮▮▮▮ Trust Dtd December 29, 1992 (the "▮▮▮ Trust")

c/o Weston Leasing
1675 Market Street, Suite 213
Weston, FL 33326

Re: Broad Reach Capital, LP (the "Fund")

Dear Mr. ▮▮▮

    This Side Letter Agreement (the "Side Letter") is effective as of the dates set forth below but not later than the date of the letter itself. This Side Letter is made in consideration of the various investments in the Fund beginning March 1, 2016. ▮▮▮ and the ▮▮▮ Trust are collectively referred to as the "Investors". The investments in the Fund were made through transfers into the Fund from two different sources. ▮▮▮ transferred moneys from a prior dividend trading strategy arrangement more fully set forth in a Participation Agreement dated March 1, 2016 between TA1, LLC, a Pennsylvania limited liability company, and Pelican Trading LLC ▮▮▮ Partnership, a Florida general partnership (Avalon being a partner thereof)(the "Dividend Trade Agreement"). In addition the Fund received moneys from both ▮▮▮ and the ▮▮▮ Trust transferred from ▮▮▮ Capital Partners, LP, (a fund formerly operated by Gary Anderson).

    This Side Letter shall supersede and take priority over any provisions to the contrary contained in any of the Confidential Private Placement Memorandum and any and all other governing documents of the Fund, including without limitation the Limited Partnership Agreement (the "Documents"). This Side Letter is specifically authorized by Section 2.3(gg) of the Limited Partnership Agreement (the "Agreement").

    Accordingly, notwithstanding anything to the contrary in the Documents, the parties agree, intending to be legally bound, as follows:

    1.    Pursuant to Section 3.4(e) of the Agreement, Broad Reach Partners, LLC (the "General Partner") hereby reduces the Performance Allocation paid to the General Partner with respect to the investment of the Investors to an amount equal to thirty five percent (35%) effective December 1, 2016. Prior to that date the Performance Allocation to be paid to the

1

General Partner with respect to the investment of the Investor was a reduced amount equal to forty percent (40%). The Performance Allocation is and shall be subject to a highwater mark and further to the provision that the General Partner Performance Allocation paid to the General Partner with respect to the investment of the Investor shall be reduced in the event that the General Partner affords, directly or indirectly, any other investor in the Fund a lower Performance Allocation (i.e. the General Partner's Performance Allocation is subject to what is commonly known as a "most favored nations clause"). The Performance Allocation payable to the General Partner is subject to and limited by what is referenced in Section 3.4 (c) as a Loss Carryforward. By way of clarification, the calculation of the Loss Carryforward Performance Allocation limitation uses the same methodology as the High Water Mark calculation relating to the Incentive Allocation detailed on Schedule A of the Dividend Trade Agreement. For example, in the event a limited partner was to earn $100,000 of profits one month, and then lose $100,000 the next month, no Performance Allocation would be due the General Partner unless and until the limited partner recouped that loss (subject to adjustment for withdrawals).

2. The General Partner confirms and agrees that, Nottingham Fund Administration ("the Administrator") has been appointed as the administrator for the Fund. Fund Statements with regard to the Investors' account shall be provided to the Investors directly from the Administrator not less than monthly and shall show (i) the total return of the Fund, (ii) the allocation to each of the Investors and the General Partner and (iii) a statement that the Statement has been reconciled as to each investor and the General Partner; the Administrator shall prepare all Statements using information obtained directly from each custodial broker (whether this be the Prime Broker or any other broker or broker-dealer), and not solely from information provided by the General Partner. The Administrator shall at all times have direct online viewing access to the Funds brokerage accounts. The General Partner shall provide an appropriate contact point for the Investor in the event it or its auditors require direct communication with the Administrator, and hereby consents to the Administrator and the Investor having direct communications with regard to the accounts of the Investors and the methodology by which the Administrator prepares the statements (which consent shall not be withdrawn).

3. The General Partner confirms and agrees that, Sanville & Co. ("the Auditor") has been appointed as the auditor for the Fund, and shall perform an audit with respect to calendar year ending December 2016. The General Partner shall forthwith provide an appropriate contact point for the Investor in the event it or its auditors require direct communication with the Auditor, and hereby consents to the Auditor and the Investor having direct communications to the extent consistent with sound auditing practice (which consent shall not be withdrawn). The contact person at the Auditor is currently Nicholas Matteo in Abington. The tax returns for the Fund (US Form 1065 and PA Form 65) shall be prepared or reviewed and signed a qualified CPA other than a Control Person of the Fund (in other words either the Auditor or an independent CPA); the Fund does not anticipate that the Investors' income from the Fund will be treated as Pennsylvania source income.

4. The General Partner shall give the Investor thirty days (30) day notice prior to any change in the Administrator or Auditor of the Fund initiated by the General Partner. And the provisions set forth herein shall be communicated to and bind any successor Administrator or Auditor of the Fund. The General Partner shall give the Investor notice within five (5) days of any change in the Administrator or Auditor of the Fund **not** initiated by the General Partner; the General Partner shall communicate this obligation to the Administrator and the Auditor who shall confirm that they shall provide any such notice to the Investor directly. The Investor shall be entitled to liquidate its investment in the Fund (a redemption, in part or in whole) prior to the

FOIA CONFIDENTIAL TEATMENT REQUESTED

BROAD REACH_SEC 000148

SEC- -E-0000148

General Partner making any such change initiated by the General Partner and upon any notice from the Administrator or the Auditor effecting a change in the Administrator or Auditor.

5. The General Partner shall give the Investor, and the Administrator thirty (30) days notice prior to any change in the Prime Broker of the Fund initiated by the General Partner. The General Partner shall give the Investor notice within five (5) days of any change in the Prime Broker of the Fund not initiated by the General Partner. The General Partner shall communicate this obligation to the Administrator who shall provide any such notice to the Investor directly. The Investors shall be entitled to liquidate its investment in the Fund (a redemption, in part or in whole) prior to the General Partner making any such change initiated by the General Partner and upon any notice from the Administrator or the Auditor effecting a change in the Prime Broker. The Prime Broker is and at all times has been Industrial and Commercial Bank of China Financial Services ("ICBCFS").

6. A copy of this Side Letter shall be provided to the Administrator and the Auditor who shall confirm its receipt directly to the Investors.

7. As of December 1, 2016 the Investors have participated in all of the Investment Strategies of the Fund. The Investment Strategies of the Fund are generally set forth in a document referencing the Fund on letterhead of Bristol Advisors, LLC (the Investment Advisor), a copy of which is attached hereto. The General Partner agrees that the Fund shall not materially change its Investment Strategies without thirty (30) days written notice to the Investors. Notwithstanding the foregoing, the General Partner may add additional investment strategies and/or traders provided such investment strategies utilize products similar to those currently traded by the Fund.

8. The General Partner hereby confirms that as of November 30, 2016, the capital account of Avalon was Four Million Two Hundred Sixty-Eight Thousand Twenty-Six and 35/100 Dollars ($4,268,026.35) as set forth in the statement dated as of December 31, 2016 prepared by CV Fund Administration, LLC. In addition, the General Partner and the Investor hereby confirm to each other that as of November 30, 2016 there is NO Loss Carryforward applicable to the Investor.

9. The General Partner hereby confirms that as of November 30, 2016, the capital account of ▇▇▇ Trust was Two Hundred Forty-Seven Thousand Nine Hundred Twenty-Three and 82/100 Dollars ($247,923.82) as set forth in the statement dated as of December 31, 2016 prepared by CV Fund Administration, LLC. In addition, the General Partner and the Investor hereby confirm to each other that as of November 30, 2016 there is NO Loss Carryforward applicable to the Investor.

10. The management, operation, determination of policy and investment decisions of the Partnership shall be vested exclusively in the General Partner as provided in Article 2 of the Agreement. However, notwithstanding Article 2, the following terms and conditions shall control and supplement the Agreement.

Ms. Brenda Smith and Gary Essayan (the "Key Individuals") are hereby declared to be key members of the operating staff of the General Partner. In the event of the death or disability of any key member of the operating staff of the General Partner, its Board of Directors (if applicable), its manager, or member or other management arrangement (the "Control Persons"), regardless of the nature thereof shall convene an immediate, emergency meeting jointly with the Limited Partners holding not less than a majority of the Limited Partners' Partnership

3

Percentages to determine the most appropriate course of action; provided, however such a meeting shall not be required in the event the death or disability is not that of Brenda Smith (so long as she is then a Key Individual).

Possible courses of action would range from taking no action at all to ordering the liquidation of all open positions, and the liquidation and dissolution of this Partnership. The Control Persons and one or more representatives designated by the Limited Partners holding a majority of the Limited Partners' Partnership Percentages would coordinate any action taken with the Fund's administrator (currently Nottingham Fund Administration) and the Fund's counsel (currently Andrew Hurni, Esquire). They shall further solicit the written consent (which may be a written consent without a meeting) of the Limited Partners not affiliated with any of the Key Individuals, the General Partner or its directors, officers, employees, managers, members or other Control Persons. In the event a decision is made to continue the Partnership, or to substitute a new General Partner, any limited partner who does not provide a written consent within thirty (30) days of written request shall be deemed to have elected to redeem their partnership interest in its entirety pursuant to Section 7.1 of the Agreement.

Furthermore, notwithstanding anything to the contrary in the Agreement, in the event of the death or disability of both of the Key Individuals, the Limited Partners holding a majority of the Limited Partners' Partnership Percentages shall have the right to remove and replace the general partner, and to compel the termination of the business of the Partnership and the liquidation of the Partnership.

11.  In the event of a partial or complete redemption of an Investors' partnership interest, the General Partner shall retain the lesser of 5% or $200,000 for not more than sixty (60) days during which time any and all trading fees chargeable to the partnership shall be determined, whereupon the amount retained shall be reduced to the lesser of 2% or $100,000.

Execution and delivery of this letter agreement by and on behalf of the Fund and the General Partner constitutes a representation that such signatory is authorized under the Documents to execute and deliver this letter agreement. This letter agreement is binding on and enforceable against the Partnership and the General Partner notwithstanding any contrary provisions in the Documents, and in the event of a conflict between the provisions of this letter agreement and the Documents, or of any other document applicable to the General Partner, the provisions of this letter agreement shall control.

All other provisions of the Documents shall remain in effect.

This letter agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware.

Please confirm your agreement with the foregoing by countersigning this letter in the

FOIA CONFIDENTIAL TEATMENT REQUESTED

BROAD REACH_SEC 000150

SEC-            E-0000150

space provided below and returning an executed copy to us at the address set forth above.

Very truly yours,

BROAD REACH CAPITAL, LP

By: BROAD REACH PARTNERS, LLC
Its: General Partner

By: *Brenda Smith*
Name: Brenda Smith
Title: Managing Partner

Confirmed and agreed
As of the date first written above:

▮▮▮ Investor LP-▮▮▮ Trust, LLC, a Florida limited liability company

By: ▮▮▮ Revocable Trust UA Dated March 25, 2008, Sole Member

By: _____
Name: ▮▮▮
Title: Trustee

▮▮▮ Trust UA Dated December 29, 1992

By: _____
Name: ▮▮▮
Title: Trustee

5

FOIA CONFIDENTIAL
TEATMENT REQUESTED

▮▮▮_BROAD REACH_SEC 000151

SEC-▮▮▮-E-0000151

space provided below and returning an executed copy to us at the address set forth above.

Very truly yours,

BROAD REACH CAPITAL, LP

By: BROAD REACH PARTNERS, LLC
Its: General Partner

By: _____
Name: Brenda Smith
Title: Managing Partner

Confirmed and agreed
As of the date first written above:

███ Investor LP-███ Trust, LLC, a Florida limited liability company

By: ███████ Revocable Trust UA Dated March 25, 2008, Sole Member

By ███
Name: ███
Title: Trustee

███ Trust UA Dated December 29, 1992
███████

By: ███
Name: ███
Title: Trustee

5

FOIA CONFIDENTIAL
TEATMENT REQUESTED

███ BROAD REACH_SEC 000152

SEC-███-E-0000152



# Distinctly Different Trading Strategies:

**Dividend Trade**
- Purchase and sale of call options for dividend paying stocks
- Trade calls related to stocks going ex-dividend next day
- Long calls are exercised and Options Clearing Corporation assigns certain calls
- Prime Broker allocates the assigned call options to its customer accounts
- Once assignments are apportioned, the account is short calls and long stock in the same amounts
- Dividends are paid on the long shares

**Volatility Skew Trade**
- Sale of short downside puts in equity and ETF products
- Volatility spikes cause opportunities to sell puts at or near the end of the volatility skew
- Volatility skew is result of the fact that investors are basically long stock and sell upside calls and buy downside puts when they are "scared"
- In times of fear, pricing for puts moves extremely fast, creating opportunities

**VIX Options Spread**
- Attracts Alpha based on VIX call spreads while engaging in volatility statistical arbitrage
- Systematic use of probability matrix of percentages that the VIX changes compared to SPX changes
- Each trade lasts one cycle of the VIX and normally begins on Monday following second Friday of each month
- Overall the VIX trade is short 59%, long 3% and does nothing 38% of time
- Tax efficient as VIX contract is Section 1256 contract resulting in 60% long term capital gain and 40% short term capital gain treatment

**VXX Trade**
- Proprietary algorithm that determines direction and timing of trade
- First exchange traded note available for trading volatility in USA
- The value of VXX is set by the market, but it's closely tied to the current value of an index (S&P VIX Short-Term Futures$^{tm}$) that manages a hypothetical portfolio of the two nearest to expiration VIX futures contracts.

200 Four Falls Corp Ctr Suite 211
Conshohocken, PA 19428

Phone: 610. 862. 0880

FOIA CONFIDENTIAL
TEATMENT REQUESTED

BROAD REACH_SEC 000153

SEC- E-0000153



### IntraDay Arbitrage
- Proprietary algorithm that builds positions throughout the day and closes out positions market on close
- Currently trading US equities and will expand to Brazilian market

### Corporate Earnings
- Proprietary algorithm that predicts market response to corporate earnings and trades accordingly
- Unique and proprietary insights for extraordinary periods of opportunity around quarterly earnings announcements
- Consistent alpha generation and outperformance relative to market and hedge fund indices

**Broad Reach Capital LP has distinct competitive advantages:**
- Direct access to floor brokers on the PHLX for all option strategies
- Access to liquidity providers during volatile periods offer price advantages
- Material barrier to entry for the dividend trade
- Sophisticated database of historical trends utilized for several strategies
- Automated and proprietary distribution tables utilized to predetermine expected volatility direction
- Risk management expertise to limit potential losses, with automatic stop losses in place for trading strategies
- Efficient execution and clearing costs for larger volumes of equity and option trading based on agreements with affiliated entities

200 Four Falls Corp Ctr Suite 211
Conshohocken, PA 19428

Phone: 610. 862. 0880

FOIA CONFIDENTIAL
TEATMENT REQUESTED

BROAD REACH_SEC 000154

SEC- -E-0000154