# CLARK HILL

Clark Hill PLC
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
T (215) 640-8500
F (215) 640-8501

clarkhill.com

Lisa Carney Eldridge

T (215) 640-8514

F (215) 640-8501

Email:leldridge@clarkhill.com

September 23, 2020

**VIA EFiling**
Honorable Madeline Cox Arleo
USDC, District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Room MLK 4A
Camden, NJ 08101

> Re:   *Securities Exchange Commission v. Brenda A. Smith, et al.*
>         USDC, District of New Jersey, No. 2:19-cv-17213-MCA-ESK

Dear Judge Arleo:

Southern Minerals Group, LLC ("SMG") submits this Letter of Correction to the Court in limited response to the Receiver's Initial Preservation Plan ("Plan") filed August 28, 2020 (Dkt. #29) in the above entitled matter. As explained briefly in the Receiver's Plan, SMG secured an arbitration award ("Award") on May 29, 2020 against CV Investments LLC ("CVI"), a Receivership Entity as of June 29, 2020. Yet, without any basis, Receiver spuriously asserts that the claims against CVI "could not be fairly defended under the circumstances, and that accepting an uncontested arbitration award as a valid and liquidated claim would be manifestly unjust," and that "SMG's claims will need to be adjudicated as part of the claims process in this matter." Plan at 23. SMG is deeply troubled by the Receiver's unfounded statements and misleading characterization of the arbitration between SMG and CVI, and SMG hereby provides notice to the Court that SMG will vigorously oppose any attempts by the Receiver to upend the well-reasoned Award. Likewise, SMG intends to intervene as necessary in any such attempt.

SMG is especially troubled by the Receiver's implication that SMG acted impermissibly and/or deceptively in its dealings with CVI under the parties' contract, or in pursuing the arbitration when CVI failed to fulfill its obligations under that contract. Simply put, SMG is a victim of Brenda Smith, CVI's sole representative, just the same as the equity investors that the U.S. Securities and Exchange Commission ("SEC") and the Receiver are seeking to protect. Smith used the same deceptive tactics and lies in her contractual relationship with SMG as she did with the equity investors in her many enterprises. As explained by the Honorable Mark I. Bernstein (ret.) (the Arbitrator):

September 23, 2020
Page 2

> *The defendant repeatedly made false reassurances about imminent performance, and intentionally misled the plaintiff about its intention and ability to perform. As detailed above, there can be no question that the continual bogus reassurances and purportedly detailed explanations of the imminent receipt of funds to pay the debt owed, were both malicious and committed recklessly with a wanton disregard for the plaintiff's rights.*

Award at 21 (attached hereto) (internal quotations omitted).  SMG's ultimate parent, Strategic Minerals Plc, is a publicly traded company on the AIM market of the London Stock Exchange, and the Receiver's baseless assertions are harmful to its reputation and its stockholders.

The Receiver is also disingenuous in suggesting that the timing of SMG's arbitration action, after Smith's incarceration, is problematic because she did not have access to her records, was unrepresented, and filed no responsive pleadings (other than blanket requests for delay). Plan at 22.  SMG attempted to negotiate a resolution with Smith up until she was arrested in August 2019.  See Award at 18-19.  Thus, SMG's arbitration action was, by necessity, filed after her incarceration.  The Receiver also ignores the fact that Judge Bernstein and the American Arbitration Association went to considerable lengths to include Smith in the proceeding, including ordering that the arbitration operate by paper filings and giving Smith considerable additional time to account for any delays in mailing her responses.  As Judge Bernstein noted in his Award, Smith twice asked for a six-month delay "but offered no explanation as to how anything would change in 6 months," and he also noted that Smith made "no suggestion" she "lacked sufficient knowledge to participate."  Award at 2-3.  Otherwise, she simply ignored the Arbitrator's schedule and SMG's pleadings.

The Receiver's position is especially paradoxical given that the SEC's prosecution of this case is no different from SMG's action: Smith is unrepresented, does not have access to her records, and has largely filed no responsive pleadings.

Finally, SMG advises the Court that on July 10, 2020, it provided the SEC and the Receiver with notice of the Arbitration Award and SMG's related Petition to Confirm the Award in the United States District Court for the Eastern District of Pennsylvania.  On a July 14, 2020 conference call with the SEC and the Receiver, SMG, in good faith, discussed the nature of the action, its desire to work out an arrangement where the confirmation could go forward, and its willingness to delay any action so that the Receiver could have an opportunity to review and assess the myriad of issues in this case.  SMG even offered to make certain personnel available to the Receiver and the SEC if that would assist them in their efforts.  SMG tried to avoid unnecessary litigation and expense to the Receiver, but such deference is no longer possible, as the Receiver's Plan seeks to strip SMG of the restitution and relief to which SMG is entitled.

September 23, 2020
Page 3


        SMG is prepared to intervene if the Court determines that this Letter of Correction requires such further action.




Respectfully Submitted,                          Respectfully Submitted,

SLOVER & LOFTUS LLP                              CLARK HILL PLC



Daniel M. Jaffe                                  Lisa Carney Eldridge
Of Counsel
*Pro Hac Vice* Motion to be submitted



cc: Brenda A. Smith (First Class Mail)

LCE:blr



CLARK HILL
#260865472

**AMERICAN ARBITRATION ASSOCIATION**

**Commercial Arbitration under AAA Commercial Rules and Mediation Procedures Amended and effective October 1, 2013**

AAA Case 01-19-0002-9998

Southern Minerals Group, LLC

Represented by Daniel Jaffe, Esq. and A. Rebecca Williams of Slover & Loftus LLP

      v.

CV Investments, LLC

ex parte

<u>FINAL AWARD</u>

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement dated April 7, 2017 and entered into between Claimant, and Respondent, and having been duly sworn, and having duly reviewed the proofs and allegations of Southern Minerals Group, LLC, and CV Investments LLC having failed to submit proofs and allegations after due notice by mail in accordance with the Commercial arbitration Rules of the American Arbitration Association, hereby, AWARD as follows:

<u>Decision and Opinion</u>

An award is entered in favor of claimant Southern Minerals Group, LLC and against respondent CV Investments LLC in the amounts set forth below.

## Procedure

Pursuant to the agreement between the parties dated April 7, 2017 as amended June 6, 2018, claimant filed this action on September 20, 2019. Apparently, respondent's principal had been indicted by Federal Authorities and at the time of filing its primary representative was incarcerated in Federal custody.

On December 4, 2019, Hon. Mark I. Bernstein (Ret.) was selected to be the AAA arbitrator for this matter under the Large Complex procedures of the Commercial Arbitration Rules as amended. Given the claim amount, the Procedures for Large, Complex Commercial Disputes specifies the number of arbitrators to be three. The parties' arbitration provision was silent as to the number of arbitrators. Pursuant to the applicable rules, expecting to be required to pay all costs of arbitration, petitioner requested that the number of arbitrators be reduced to a single arbitrator. According to the rules the first arbitrator determines whether to proceed with a single arbitrator or if three shall be appointed. Since Respondent's representative was only able to communicate via US Mail, it was directed that all communication was to be made in writing.

On, November 11, 2019, Brenda Smith, respondent's representative, submitted a handwritten letter request an indeterminate stay alleging an inability to respond because company records had been seized and had been retained by Federal authorities. Respondent offered no suggestion as to how or when this situation would change, such that the matter could resume. Most significantly, as claimant stated in their response there was no suggestion that Smith lacked sufficient knowledge to participate. Claimant further claimed that had this matter been amenable to court filing, a default judgment, unavailable in AAA arbitration,

would have been entered and claimant would earlier have had a judgment to collect upon if respondent did not participate.

Respondent requested a hearing by three arbitrators.  Claimant responded that no right existed and since claimant would be paying for all costs of arbitration requested the matter be decided by one arbitrator  in accord with the AAA rules. By Order dated December 14, the arbitrator ruled that one arbitrator would decide the matter and that the preliminary hearing would be held by written submission.

On January 8, 2020, the arbitrator received Claimant's written preliminary hearing statement and respondent's written letter which did not contain any substantive preliminary hearing statement and merely asked for a 6-month extension, but offered no explanation as to how anything would change 6 months hence.  On January 9 claimant responded in writing to the requested extension.

By Order dated January 31, 2020 the arbitrator ruled that this matter would proceed and set a schedule for discovery and hearing through written submissions.

By submission dated March 20, 2020, as required by the January 8, 2020 Order, claimant submitted its affirmative case memorandum containing procedural background, statement of material facts, and memo of law.  Attached thereto were the verified statements of John Peter and Clovis Hooper and a statement of damages.

Claimant also advised that by correspondence dated February 20, 2020 they had submitted Requests for Admissions, Interrogatories, and Requests for Production of Documents and had received no substantive responses but had received a handwritten letter dated March 20, 2020 which was attached.

Respondent's letter stated that although she was unable to retain papers but could have access to a thumb drive.

Accordingly, On April 8, the arbitrator Ordered a thumb drive be provided to respondent and that thereafter, respondent would have 10 days to respond to Claimants discovery requests, or the Request for Admissions would be deemed admitted.

On April 20 Claimant Southern Mineral Group, submitted a memorandum entitled "Rebuttal of Claimant" in which it pointed out that no substantive response whatever had been received from respondent as to the claim and renewed its request for damages.

Claimant sent a thumb drive to respondent on April 27. Since there has been no response by respondent, the Requests for Admissions are deemed admitted.

All required due process was afforded to both sides through the impartial application of the Arbitration Rules agreed to by the parties in their agreement. All reasonable accommodation was made for the parties. No in person or even telephonic conferences were required and all submissions could be made in writing. Handwritten submissions were accepted, considered, and evaluated. No substantive responses were ever received from respondent.

The record was properly closed on May 13, 2020.

<u>Factual Findings</u>

On April 7, 2017 Mr. Clovis Hooper, President of Claimant Southern Minerals Group, LLC (hereinafter SMG) negotiated a Magnetite Concentrates Purchase and Sale Agreement ("PSA") between SMG and Respondent CV Investments LLC ("CVI")

This agreement was subsequently amended on June 6, 2018. Under that agreement, CVI committed to purchasing 400,000 tons of magnetite from SMG at a price of $80.00 per ton at a rate of 4,000 per month beginning in June 2017. This agreement was amended in mid-2018. However, beginning in October 31, 2018 CVI began a pattern of failure of performance followed by representations and promises which were never fulfilled. (see verified statements of Mr. John Peters and Clovis Hooper) CVI has made no payments to SMG since October 2018 (Request for Admission No. 1). CVI breached the PSA. (Request for Admission No. 3). CVI's Smith was arrested on August 27, 2019. As of March 1, 2020, SMG's liquidated damages are in the amount of $4,215,000, exclusive of interest. (Request for Admission No. 2).

Mr. John Peters is the Managing Director of Strategic Minerals PLC, parent company of Southern Minerals Group, LLC ("SMG"). Together with SMG's President, Mr. Clovis Hooper, Mr. Peters negotiated with CVI the Magnetite Concentrates Purchase and Sale Agreement ("PSA") referred to above which was executed on April 7, 2017. This agreement was amended on June 6, 2018. CVI's sole representative was Ms. Brenda Smith ("Smith").

SMG has exclusive access to a magnetite stockpile and operates a magnetite sales operation from the Cobre Mine in New Mexico. SMG's access rights to the magnetite is limited to 800,000 tons. Pursuant to the PSA contract CVI was obligated to purchase 400,000 tons of concentrates with minimum monthly purchases of 4,000 tons. SMG committed access to those tons exclusively to CVI. This commitment by SMG amounted to 50% of its total access to magnetite. Throughout the term of the agreement SMG was able to provide the full 400,000

tons to CVI in accordance with the PSA's monthly purchase schedule. SMG's staffing and costs increased to accommodate the commitment to CVI. CVI took only a total of 38,414 tons of magnetite concentrate from the initiation of the PSA in June 2017. Most of this volume was taken in the first few months. All but one of the shipments was moved, at CVI's request, to property in New Mexico.

CVI defaulted on its required payments. By the end of 2017, CVI was $642,000 in arrears. All CVI shipments were made by truck as required under the PSA. However, when CVI had no named destination for the delivery of the magnetite concentrates CVI requested storage in New Mexico. CVI made 19 payments to SMG for magnetite between June 19, 2017 and October 31, 2018. At various points in 2018, CVI paid some of its outstanding balance but $371,000 was owing when the Parties negotiated the First Amendment in June 2018. SMG generously reduced the outstanding amount owed by over $215,000, conditioned on CVI's payment of the reduced balance. That amended agreement required CVI to make quarterly deposits in lieu of taking the 4,000-ton minimum.

Despite assurances, CVI repeatedly failed to make these required payments. CVI's regular monthly obligations were to resume beginning March 1, 2019. The last CVI payment to SMG was in October 2018. Despite ceasing to make payments, CVI's Smith repeatedly assured SMG that CVI was about to sell a bond and receive a major infusion of cash. Smith reassured that SMG would be paid what was owed when that sale closed. CVI repeatedly claimed that the closing was delayed by forces outside its control. Smith continued her reassurances until August 2019 when she was arrested for allegedly engaging in a Ponzi scheme and CVI assets were seized. SMG's obligations under the PSA and CVI's excuses, delays and

diversions precluded SMG from pursuing other potential purchasers of the magnetite concentrate.

A detailed spreadsheet of SMG's transactions with CVI under the PSA was attached as Exhibit No. 1 to the statement of Mr. Hooper.

Under the amended agreement, CVI's monthly obligations restarted March 1, 2019. CVI failed to make any required payments, these required payments equaled $3,840,000 for the 12 months between March 2019 and February 2020. Consequently, as of March 2020, CVI's liquidated damages owed to SMG equaled $4,215,000, exclusive of interest. In addition to the liquidated damages CVI's breach of the PSA has resulted in SMG incurring direct and consequential damages. CVI's PSA represented a commitment to purchasing half of SMG's magnetite inventory. The volume committed to, and the expected revenue from, CVI under the PSA far exceeds the volume purchased by, and revenue earned from, all other SMG customers combined. Thus, in 40 months, SMG expected to realize significant profits associated with CVI exclusive access to their magnetite rights.

To determine lost profits, the damages calculation has three complementary analyses. The first analysis assumes that CVI performed as required under the PSA. SMG expected to realize over $45.6 million in total revenues during the approximately 8 years of the PSA (2019 – 2027). Of that $45.6 million, SMG expected that CVI purchases would account for $28.9 million, or 63% of all revenues. During that same period, SMG has known and estimated unit costs. SMG's calculation of $21.1 million in expenses is a conservative analysis representing the expenses that SMG might have incurred. Thus, SMG expected to

earn $24.5 million of net profit over the balance of the PSA. To determine the net present value ("NPV") of the expected profit, SMG applied a discount rate of 2%. The NPV calculation yields a current value of reasonably expected profits of **$22.7** million.

SMG's second analysis accurately assumes that CVI made no further purchases from January 1, 2019 thru the remainder of the PSA. In this analysis, SMG's expected profits drop dramatically because SMG will likely have to extend its operating period by 20 years to sell the same volume of magnetite concentrate, and revenues are likewise impacted because certain customers pay less per ton than CVI. Critically, the extended period means SMG will incur additional recurring and fixed expenses with fewer sales. SMG's calculation is again, very conservative. The second analysis shows that over the 20-year period, SMG would earn $41.2 million in revenue  and  incur approximately $36.0 million in expenses over the same period. The second analysis shows that SMG expected to earn $5.2 million net profit over the 20-year period. Consistent with the first analysis, SMG applied a discount rate of 2% to determine the NPV of the expected profit. The NPV calculation yields a current value of $**4.4** million.

SMG's third analysis calculates the difference between these conservative analyses. The third analysis shows that the difference in the NPV of the expected profits between the first and second analysis is $18.3 million. Thus, SMG submits that its total damages attributable to CVI's breach of the PSA is $18.3 million. However, as $4,215,000 of the damages is already a known and liquidated value, SMG calculated it lost  $14,090,599 in profit damages and $4,215,000 million in

liquidated damages. The arbitrator finds this analysis to be reasonable,
conservative, and accurate.

### Detailed Findings of Bad Faith

CV Investments LLC ("CVI") is owned, controlled, and operated by Ms. Brenda Ann
Smith. Ms. Smith stands charged by the U.S. Attorney for the District of New
Jersey with five (5) criminal counts, including four (4) counts of wire fraud and one
(1) count of securities fraud. On the same day as criminal charges were lodged, the
U.S. Securities and Exchange Commission ("SEC") filed a civil complaint in the U.S.
District Court for the District of New Jersey against Smith and her various
corporate entities for violations of securities laws. On September 10, 2019, the
assets and bank accounts of several the named defendants were frozen.

SMG has the exclusive right to access approximately 800,000 tons of
magnetite concentrates. Under the PSA, CVI was obligated to purchase 400,000
tons of such magnetite concentrates for the price of $80.00 per ton with a
required minimum of 4,000 tons per month beginning June 1, 2017. In return,
SMG was required to "ensure that it does not undertake any activities that impact
the Purchases [sic] rights to the magnetite concentrates." Given commitments to
other customers and local regulations, SMG was prohibited from providing more
than 5,500 tons of magnetite concentrates per month to CVI. SMG requested, and
CVI provided, "a deposit of $10,000" to SMG. Likewise, SMG requested, and CVI
provided, a "standby letter of credit in the amount of $250,000.00 issued by a
major US banking institution" or a cash deposit in the same amount to be held "in
solicitor's trust."

CVI's monthly purchases of magnetite ore began June 1, 2017, and shipments of the material began on or around July 1, 2017. Between June 2017 and October 30, 2017, CVI met its contractual obligations under the PSA by purchasing the required minimum of 4,000 tons of magnetite ore each month and promptly payed for those purchases. Beginning with the SMG invoice dated October 31, 2017, CVI's payments fell into arrears.  In January 2018, CVI paid its outstanding balance of $642,572.80. Immediately following its January 2018 payment, CVI again fell into arrears, and by March 2018, CVI owed SMG $521,404. In March 2018, CVI  notified SMG that it was "unable to take delivery of the minimum volume" of the magnetite ore due to delays in "obtaining environmental approvals." To continue their contractual relationship the parties entered the First Amendment dated June 6, 2018. The First Amendment suspended CVI's obligation to purchase a minimum of 4,000 tons per month "for the period March 1, 2018 through May 31, 2018; provided, however, that such waiver is contingent on [CVI] meeting its obligations as otherwise required in the PSA and this Amendment." The referenced obligations included CVI paying the amount then in arrears, $371,404, according to a detailed payment schedule. If CVI failed to meet that payment schedule it would "forgo[] any right to take the remaining balance of the Prepaid Quantity for the applicable calendar quarter . . . ." CVI agreed to "resume its obligation to undertake to purchase a minimum of 4,000 tons per month at $80 per ton," beginning March 1, 2019. CVI failed to make the payments required.

On June 15, 2018, SMG invoiced CVI for the first quarterly prepayment of $375,000 in accordance with Section 4 of the First Amendment. Payment was due June 25, 2018.  On July 10, 2018, CVI paid that invoice.  On September 1, 2018,

SMG invoiced CVI for the second quarterly Prepayment due September 11, 2018. CVI failed to make that payment.

On September 13, 2018, SMG provided notice to CVI that it must rectify its past due amounts of over $600,000 otherwise SMG would consider CVI in default,

On Monday, October 8, 2018, SMG again wrote to CVI regarding the outstanding balance of $371,404 and offered to reduce the outstanding balance by $217,431.20 to reflect the 2,717.89 tons of the 4,000 ton minimum that CVI did not take physical delivery of in February 2018. This offer was contingent upon CVI paying the remaining balance in three installments and CVI release to the $250,000 security deposit CVI had previously made. On October 11, 2018, CVI made a counteroffer that accepted the structure of SMG's proposal but extended the time for the installment payments. SMG agreed to CVI's counteroffer. Nonetheless, CVI failed to make the initial installment payment on the agreed upon due date of October 22, 2018 but did make two payments totaling $53,972.80 on October 31, 2018. CVI subsequently missed the two remaining $50,000 installment payments due November 5 and November 19, 2018. Likewise, CVI never paid the outstanding balance by December 11, 2018 as required.

CVI has not made any further payments to SMG. On December 29, 2018, SMG sought further payment, requesting that CVI pay its outstanding balance of $475,000 before the end of 2018.

On December 29, 2018, CVI offered to pay the $475,000 in the first week of January 2019. SMG suggested CVI agree to release to SMG $100,000 from CVI's security deposit; pay the remaining $375,000 owed to SMG in the first week of January 2019; and replenish the amount of the security deposit released to SMG.

On December 30, 2018, CVI agreed to SMG's proposal and consented to the $100,000 transfer from the security deposit to SMG. CVI never paid the remaining $375,000 due to SMG, nor did it ever replenish the deposit. Instead, CVI began a series stalling tactics.

January:

- On January 4, 2019, CVI's Smith stated that SMG should have the funds the "following week."
- On January 9, 2019, CVI's Smith stated that the funding should be approved "[b]y end of day tomorrow"
- On January 17, 2019, CVI's Smith claimed "3 deals to close today or tomorrow. My funds from deal payout within one week."
- On January 17, 2019, CVI's Smith claimed she has the "financial instrument in hand to fund."
- On January 22, 2019, Smith claimed that closing would occur the following day (January 23, 2019) and informed SMG's Peters that she sent him "a confidential copy" of the "actual financial instrument,". Nonetheless, no payment was forthcoming.

February:

- On February 8, 2019, Smith said that she "was just told my wire leaves at 9 am tomorrow London time. Of course, I have to wait for banks to open here. I fully expect to be able to send $475,000 tomorrow. I will be happy to discuss future plans early next week."
- Yet again, on February 16, 2019, CVI's Smith claimed to "have taken control of the entire transaction and spent the day working out

details. I now have direct contact with the buyer of my bond and his banker. . . . I fully expect a wire on Monday and am not relying on anyone in between." CVI's Smith further assured SMG of CVI's ability to secure funding for payment, stating "BTW [by the way], this is real, I will close" and blaming the delay on a number of things, including the time difference and that the "buyer trader was delayed in [the] subway."

- On February 27, 2019, CVI's Smith claimed that an "[i]nstrument [was] delivered last night at 22:00 by my trade desk."

## March:

- Beginning March 1, 2019, SMG resumed invoicing CVI for its monthly minimum purchases of 4,000 tons of magnetite concentrates, pursuant to Section 4(b)(ii) of the parties' First Amendment.  Yet on March 1, 2019 Smith claimed that the "buyer bank downloaded the message / instrument today. Waiting for buyer account to get credit for instrument and then funds are released. Unfortunately, I am told that could take up to 5 days from transmission which was Tuesday."

- On March 8, 2019, SMG's Peters notified CVI's Smith that he needed to update his Board of Directors on the "expected timing of payment and plans to address the existing contract . . . ." On March 9, 2019, CVI's Smith responded, "still not closed & no production,"

- On March 13, 2019, SMG's Peters again inquired as to the timing of payment, to which CVI's Smith again responded with the claim that she was "[t]rying to close this week."

- On March 29, 2019, SMG requested an update from CVI's Smith by close of business regarding CVI's overdue payments, including a $50,000 wire transfer that CVI supposedly sent to SMG the prior week.

- On March 30, 2019, CVI's Smith claimed her banker had moved their scheduled meeting, and she would have to confirm with him when her transactions would be final and would check on the "outgoing wire."

## April

- On April 3, 2019, CVI's Smith again claimed her "banker delayed the meeting until April 8." And that she had "pending transactions that will close this month," but "do[es] not have substantial cash on hand until closing."

- On April 11, 2019, CVI's Smith stated that she did not "have the funds" to pay, but that the "funds are closing on Tuesday April 16."

## May:

- On May 15, 2019, Smith, provided a purportedly "internally generated balance sheet" for CVI showing over $59 million in assets.

- On May 21, 2019, CVI's Smith responded to an email from SMG's Peters requesting an update, again claiming that she "expect[ed] to receive funds by close of business" the next day. on

- May 23, 2019, SMG's Peters again asked CVI's Smith via text message if the bonds had settled. CVI's Smith claimed she "should have funds tomorrow." On that same day SMG's Peters asked CVI's Smith to

formally agree to undertake certain actions to avoid legal proceedings, as follows: I was able to get my UK Directors and Alan this morning and I have got them to agree that, provided, on behalf of CV Investments, you undertake to pay SMG, within two weeks, the $375,000 December payment and top up the existing deposit with SMG by $3,690,000 they will hold all actions for those two weeks. . . . . Please provide, on behalf of CV Investments, agreement to these arrangements." CVI's Smith responded "Agreed. Thank you very much. Brenda.".

- When SMG attempted to memorialize the parties' new agreement in a Second Amendment to the PSA, CVI did not execute the Second Amendment, despite having already agreed to the terms. On May 25, 2019, SMG's Peters again asked CVI's Smith via text message if CVI had secured its funds yet. Responding that same day, CVI's Smith again put off SMG's Peters, claiming it would be "first thing Tuesday am [morning]"

- On May 29, 2019 , after the date CVI's Smith claimed the funds would be available, SMG's Peters asked CVI's Smith via text message: "has Merrill released the funds" and, if not, "what are your expectations." CVI's Smith only responded with "tomorrow."

- On May 30, 2019, SMG's Peters asked CVI's Smith to "please update the position with CVI." CVI's Smith responded that same day, stating "Not yet. Still working hard on it."

June:

- On June 3, 2019, CVI's Smith emailed SMG's Peters that the funds would be available in two days, citing issues with the bankers.

- On June 6, 2019, CVI's Smith stated that the buyer "changed delivery," and it would "[p]robably" take an additional day. Later that day, CVI's Smith stated she had "tried to be direct [and] honest" and was "doing everything possible to fund by Friday".

- SMG's Peters then asked CVI's Smith if CVI could at least provide SMG with $100,000 on Friday, June 7, 2019, along with supporting paperwork for the bond funds that Peters could show to SMG's Board of Directors. Id.  CVI's Smith responded that it would provide SMG with the requested $100,000 and paperwork by Friday June 7, 2019 but then failed to do so.

- On June 7, 2019, the supposed bond sale did not settle despite CVI's Smith claiming that the bankers were "working on it."

- On June 8, 2019, CVI's Smith claimed she was "[j]ust off [the] phone with [the] Buyer" and that they were working it, but there would be "[n]o wire today but it will go out Monday."

- On June 11, 2019, CVI's Smith again suggested that funds "may" be available "tomorrow" if the bankers can move the process along.

- On June 14, 2019, Peters sent  Smith a text message requesting a telephone conference. Smith claimed she was sick. Later that day, when asked  for an update on the bonds, Smith responded "[w]orking with bankers now".

- On June 20, 2019, Peters again asked  Smith for an update, to which Smith responded "[t]rying to receive one transfer today. Still waiting on email from banker."

- On June 23, 2019, Smith claimed she was "[w]aiting on confirmation of transfer."

- On June 24, 2019 Smith did not respond to Peters request for status.

- On June 26, 2019, Peters asked  Smith if CVI was "any firmer on timing of cash payment to SMG," and was told "[e]xpect [F]riday".

- On June 28, 2019, the new expected payment date, CVI failed to make payment.

- On June 30, 2019, CVI's Smith said: "I can make that payment based on drawing down the bond," .

July:

- On a July 13, 2019 telephone conference,  Peters and Smith discussed an option, whereby CVI would borrow against a supposed LOC for ninety (90) days to pay SMG while CVI awaited its supposed bond settlement.

- On July 14, 2019,  Peters asked CVI's Smith whether CVI had considered the option, but CVI's Smith did not answer the question and instead suggested she was "trying."

- On July 14, 2019,  Smith purported to send SMG details of the bond issuance.

- On July 18, 2019, alarmed by reports that FINRA had cited and subsequently barred Smith from "associating with any FINRA

member" for rules violations, Peters text messaged Smith asking about the matter. CVI's Smith claimed the FINRA violations were not related to her trading and said she could "explain on [the] phone."

- On July 24, 2019, Smith stated that she should have confirmation that the bond had settled that day.

- On July 26, 2019, Smith claimed her banker "says I will have bank statement showing 100 mm tomorrow & it will be available to disburse next Wednesday" (July 31, 2019).

- On July 27, 2019, Smith said: "I do not have statement yet. I give up. Sue me" . She later stated she was still waiting for an update from the banker, but funds should come through "this week for sure."

## August:

- Throughout the month of August 2019, the "deal" was supposedly imminent, but then CVI ceased all communication.

- On August 9, 2019, SMG's Peters emailed Smith asking why she had "stopped communicating." Smith responded, claiming that her "banker now says I should have some funds on Tuesday [August 13, 2019]. He says [C]credit Suisse is wrapping up monetization. Can we wait until Tuesday?"

- On August 14, 2019, Smith claimed: "I talked to my banker this morning and he said the 'monetizer' has accepted the instrument, Credit Suisse has completed their process and agreed to start disbursements. He says funding is imminent." Despite these claims, no funds were ever disbursed to SMG.

- On August 16, 2019 Smith said she was waiting "for my banker to schedule." And then said: "[t]turning phone off."

- Throughout the remainder of August Peters and Smith exchanged several emails wherein Smith avoided a personal meeting or telephone conference and suggested instead "sue me or something." And then suggested that her "usa [sic] banker says I am still getting [the] advance this week but I don't have it yet."

- On August 26, 2019, Smith assured that she would sign a note for $4.065 million .

- On August 27, 2019, Smith was arrested by the FBI on charges that she had been running a Ponzi scheme. The federal indictment lodged against Smith and several of her corporate entities states that the behavior with CVI was done to many different victims.

## Conclusions:

The arbitrator draws no conclusion from the unproven allegations of the indictment. A defendant has a presumption of innocence and no conclusion can be drawn from the allegations. It is clear however, that CVI cannot now and will not in the future fulfill the requirements of the PSA.

From the submissions that form the record in this claim including the uncontested Demand for Arbitration and the exhibits attached thereto, affirmed in the statements of Mr. Peters and Hooper, the additional information provided by those statements, the unanswered and therefore admitted Request for Admissions, it is clear that CVI entered into a binding agreement, subsequently

amended, made substantial reassurances and additional promises over an eight month period and materially breached that contract, the PSA. CVI made no payments to SMG under the PSA after October 2018. Agreed upon purchases were not made. Neither was the balance due of $375,000 ever paid. Under the PSA and CVI's written assurances of payment, the amount of $4,215,000 is owing as of March 1, 2020. SMG is entitled to liquidated damages in the amount of $4,215,000. SMG is also entitled to lost profits in the amount of as set forth in exhibit 2 of Mr. Hooper's verified statement.

That verified statement explained in detail the methodology used to calculate loss. Mr. Hooper reasonably calculated the net profits expected if CVI had fulfilled its agreement over the 8 years remaining to the PSA. This lost profit was 22.7 Million dollars . He then calculated the profits expected from the sale of the same quantity of magnetite over a longer period given the failure of CVI to fulfill its agreement. This would yield 5.2 million in profits, a mitigating factor in the damages calculation. Subtracting the profits reasonably expected over the longer period due to the failure from the expected profit if the contract had been fulfilled resulted in a total profit loss of $14,090,599. Within the amount of this loss is the lost profit as of March 1, 2020 which had already been calculated and awarded as liquidated damages. Subtracting the award for liquidated damages yields a net future loss of profit at $14,090,599. In all these calculations the profit analysis had been reduced by a reasonable 2% discount rate. Mr. Hooper conservatively estimated the damages which "arise naturally and necessarily" from the breach in accordance with New Mexico Law,

## Law

The agreement requires that the law of New Mexico apply. Under New Mexico law the claim has been timely presented. NMSA 1978 §37-1-3(A) provides for a 6-year statute of limitations for contractual claims. Damages recoverable and proven herein are the damages which "arise naturally and necessarily" from the breach in accordance with New Mexico Law (Sunnyland Farms, Inc. v Cent. N.M. Elec. Co-op Inc., 301 P. 3rd 387 (N.M.2013).

Under New Mexico Law, punitive Damages are recoverable "for breach of contract whenever defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights." The defendant repeatedly made false reassurances about imminent performance, and intentionally misled the plaintiff about its intention and ability to perform. As detailed above, there can be no question that the continual bogus reassurances and purportedly detailed explanations of the imminent receipt of funds to pay the debt owed, were both malicious and "committed recklessly with a wanton disregard for the plaintiff's rights". Accordingly, punitive damages are warranted and awarded.

The purpose of punitive damages is to punish the defendant and deter others from similar conduct. The compensatory award entered herein, if collected, shall make plaintiff whole and shall allow plaintiff to recover profits reasonably but conservatively expected under the contract. Accordingly, to punish this bad faith behavior and to deter others from similar conduct, in addition to the compensatory award and in accord with New Mexico law, the arbitrator awards punitive damages in the amount of $3,600,000.

01-19-0002-9998

New Mexico law permits pre and post-judgment interest (NMSA 1978 §2004. Accordingly, pre-judgment interest on the liquidated damages awards of $4,215,000 is ordered. Post-Judgment interest is awarded from the date of entry of judgment. Since judgment is awarded based on the bad faith and intentional acts of defendant, interest is by law to be computed in the amount of 15% per annum.

Since SMG has been forced to bear all costs of this arbitration, and CVI has not participated in any meaningful way other than to request extensions, costs are awarded to plaintiff. New Mexico law does not permit the award of attorney fees except where the behavior of the defendant occurs "before the court or in direct defiance of the court's authority"(see state ex rel. N.M. State Highway and Transp. Dep't v. Baca 896 P.2d 1148 (1995), there is no authority to award attorney fees for private contractual claims even where defendant has acted in bad faith and even where the intent of the bad faith actions were intended to defer and dissuade resort to legal (or AAA arbitration) action.

<u>Judgement and Decision</u>

<u>The arbitrator awards Claimant SMG against respondent CVI the following amounts:</u>

<u>Liquidated damages:</u> $4,215,000

<u>Lost Profit:</u> $14,090,599

<u>Punitive Damages:</u> $3,600,000

<u>Prejudgment Interest at 15% on liquidated damages of $4,215,000</u>

<u>Post judgment Interest at 15%</u>

> <u>Costs:</u> The Administrative fees and expenses of the AAA totaling $12,200.00 are to be borne $12,200.00 by CV Investments, LLC. The Compensation and expenses of Arbitrator totaling $11,460.00 are to be borne $11,460.00 by CV Investments, LLC. Therefore, CV Investments, LLC has to pay Southern Minerals Group, LLC, an amount of $23,660.00.

This Final Award is in full and complete settlement and satisfaction of any and all claims that were submitted to the jurisdiction of this Arbitrator in connection with the present dispute. All claims, arguments or issues not specifically addressed in this Final Award and not reserved for further disposition, are rejected and denied with prejudice.

<u>By the Arbitrator:</u>

Dated: May 29, 2020

_____

Hon. Mark I. Bernstein (Ret)

Sole Arbitrator

I, Hon. Mark I. Bernstein (Ret), do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed the foregoing instrument, which is the Decision and Final Award in this Arbitration.

_____

Hon. Mark I. Bernstein (Ret) Sole Arbitrator