## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SECURITIES AND EXCHANGE COMMISSION,**

> **Plaintiff,**
>
> v.

**BRENDA SMITH, BROAD REACH CAPITAL, LP, BROAD REACH PARTNERS, LLC, and BRISTOL ADVISORS, LLC,**

> **Defendants.**

**C. A. No. 2:19-cv-17213 (MCA)**

## RECEIVER KEVIN D. KENT'S FIRST QUARTERLY STATUS REPORT

Robin S. Weiss, Esq.
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: (215) 864-9600
Facsimile: (215) 864-9620
E-mail: rweiss@conradobrien.com

Andrew S. Gallinaro, Esq.
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: (215) 864-8083
Facsimile: (215) 864-7403
E-mail: agallinaro@conradobrien.com

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II.  SUMMARY OF THE OPERATIONS OF THE RECEIVER ...........................4

   A.  General Legal Matters ....................................................................6

   B.  Visits to Rittenhouse Apartment and Four Falls Office, and Collection of
Valuable Belongings and Professional Equipment ...............................7

   C.  Initial Document Review and Investigation....................................8

   D.  Notices of Receivership...................................................................9

   E.  Receivership Bank Account Opening and Collection of Funds and
Documentation from Banks .................................................................11

   F.  Louisiana Properties .....................................................................13

   G.  Search for Smith's Vehicle...........................................................15

   H.  Communications with Creditors, Investors, Debtors and Claimants............16

   I.  Brokerage Account Opening and Transfer of Stock Holdings ......17

   J.  Investigation of Potential Claims .................................................19

III.  CASH ON HAND, ADMINISTRATIVE EXPENSES, AND
UNENCUMBERED FUNDS ......................................................................20

IV.  RECEIPTS AND DISBURSEMENTS ......................................................22

V.  RECEIVERSHIP ASSETS........................................................................23

   A.  Receivership Bank Account ..........................................................23

   B.  Stock Holdings ..............................................................................24

   C.  Spouting Rock Receivable ............................................................25

   D.  Louisiana Properties .....................................................................25

   E.  Additional Bank Accounts and Funds...........................................27

   F.  Additional Business Entities..........................................................29

   G.  Vehicle...........................................................................................29

   H.  Magnetite ......................................................................................29

   I.  Personal Property...........................................................................30

   J.  Office Items ...................................................................................30

   K.  Insurance.......................................................................................31

VI.   LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY
RECEIVERSHIP ESTATE ...................................................................32

VII.  CREDITORS .........................................................................................33

VIII. STATUS OF CREDITOR CLAIMS PROCEEDINGS ................................37

IX.   RECEIVER'S RECOMMENDATIONS FOR CONTINUATION OR
DISCONTINUATION OF THE RECEIVERSHIP ..................................38

X.   CONCLUSION......................................................................................39

The Receiver, Kent D. Kent, Esq., has been appointed by Order of this Court dated June 29, 2020 ("Receivership Order"), to assume control of, marshal, pursue and preserve the Receivership Assets. The Receivership Assets include all assets of Defendants, Brenda Smith; Broad Reach Capital, LP; Broad Reach Partners, LLC; and Bristol Advisors, LLC ("Defendants"); and all affiliated companies owned or controlled by one or more of the Defendants, including BA Smith & Associates LLC; Bristol Advisors LP; CV Brokerage, Inc.; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA 1, LLC; FFCC Ventures LLC; Prico Market LLC; GovAdv Funding LLC; Elm Street Investors LLC; Investment Consulting LLC; and Tempo Resources LLC ("Affiliated Entities"). The Receiver hereby submits this First Quarterly Status Report (the "Report"), in accordance with Paragraphs 67 and 68 of the Receivership Order, and reports to the Court as follows:

## I.      INTRODUCTION

On August 27, 2019, the Securities and Exchange Commission ("SEC") filed a Complaint against Defendants, Brenda A. Smith ("Brenda Smith" or "Smith"), Broad Reach Capital, LP, Broad Reach Partners, LLC and Bristol Advisors, LLC, alleging that these Defendants raised approximately $105 million from at least forty (40) investors, based upon Brenda Smith's false representations

that these funds would be invested in highly liquid securities through various sophisticated and profitable trading strategies with consistently high returns. According to the Complaint, in reality, the vast majority of these investments were funneled into unrelated companies, used to pay back other investors, or utilized for personal use; meanwhile, Defendants generated and provided false performance statements and fabricated documents regarding the Fund's assets and valuations, to lull existing and prospective investors. The SEC estimates that Defendants' investors are still owed in excess of $63 million in principal.

In conjunction with the Complaint, the SEC secured a Temporary Restraining Order Freezing Assets and Granting Other Relief on August 27, 2019. A Preliminary Injunction extending the freeze was subsequently entered on September 10, 2019. The asset freeze remains in effect, and has been modified and/or extended by the June 29, 2020 Receivership Order.

In the June 29, 2020 Receivership Order, the Court took exclusive jurisdiction and possession of all Receivership Assets including, but not limited to, assets of Broad Reach Capital, LP; Broad Reach Partners, LLC; Bristol Advisors, LLC; BA Smith & Associates LLC; Bristol Advisors LP; CV Brokerage, Inc.; Clearview Distribution Services LLC; CV International Investments Limited; CV International Investments PLC; CV Investments LLC; CV Lending LLC; CV Minerals LLC; BD of Louisiana, LLC; TA1, LLC; FFCC Ventures LLC; Prico

Market LLC; GovAdv Funding LLC; Elm Street Investors LLC; Investment

Consulting LLC; and Tempo Resources LLC (collectively referred to as

"Receivership Parties"). Receivership Order, ¶ 1. This includes assets that are (1)

attributable to assets derived from investors or clients of Defendants; (2) are held

in constructive trust for the Defendants; (3) were fraudulently transferred by the

Defendants; and/or (4) may otherwise be included as assets of the estates of the

Defendants or Affiliated Entities (hereinafter collectively referred to as

"Receivership Assets" or "Receivership Estate").

The Order explicitly identifies the following known assets, believed to be

owned, possessed, or controlled by the Receivership Parties or Brenda Smith:

> Personal property at Smith's former residence at 222 West Rittenhouse
> Square, Penthouse 3, Philadelphia, Pennsylvania; any vehicles owned
> by Smith, the Receivership Parties, or Affiliated Entities; personal
> property or office equipment at the former office spaced used by
> Defendants at 200 Four Falls Corp., Suite 211, 1001 Conshohocken
> State Road, West Conshohocken, Pennsylvania; certain real property at
> David Road and Adams Road, Parish of Tangipahoa, Louisiana; bank
> or brokerage accounts held or controlled by Smith; interests in any
> securities (such as stocks, bonds, and options); and securities purchased
> by Prico LLC, including but not limited to securities of LYFT Inc. and
> Palantir Technologies; interests in any cryptocurrency, digital
> currencies, or virtual currencies; digital or electronic property;
> intellectual property; receivables; minerals or mineral rights; and
> interests in any companies or partnerships.

Receivership Order, ¶ 2. Receivership Assets also include frozen accounts in the

names of Prophecy Alpha Fund LP; Raffle Trading LLC; Ardeleigh Investment

Advisory Services, Ltd.; Taylor Trading LLC; Awooton Consulting; and Rybicki

Capital Partners LLC, though certain third parties have expressed an interest or ownership of certain assets in these accounts. Receivership Order, ¶ 3.

Pursuant to the Receivership Order, this Report provides a full report and accounting of the Receivership Estate, reflecting the existence, value and location of all known Receivership Assets, and the extent and nature of known liabilities. However, the Receiver believes that other assets and liabilities may exist, which have not yet been identified. This Report will necessarily be supplemented by subsequently filed quarterly status reports, which will likely identify additional assets and/or liabilities of the Receivership Estate.

## II.     SUMMARY OF THE OPERATIONS OF THE RECEIVER

On June 29, 2020, the Receiver was appointed to assume control of, marshal, pursue and preserve Receivership Assets. During the first three (3) months of the Receivership, the Receiver has focused a majority of his efforts on identifying, locating, and assuming control of, Receivership Assets, with the objective of preserving these assets and maximizing recovery for defrauded investors. The Receiver is generally of the position that all real and personal property of value belonging to the Receivership Estate should be monetized and/or liquidated, to the extent feasible, and will seek authority from the Court as necessary in connection with these liquidation efforts.

To date, the main source of recovery for the Receivership has been funds secured from several bank accounts, resulting in an infusion of cash of over $800,000.00. Additionally, after the close of the quarter, the Receiver secured an additional $337,605.43 from the sale of twenty percent (20%) of Prico Market LLC's holdings in Palantir Technologies ("Palantir"). The remaining eighty percent (80%) of these shares—believed to be worth in excess of $1 million—are still locked-up pursuant to the terms and conditions of Palantir's direct listing, and should become eligible for trading during the first quarter of 2021. The Receiver is likewise exploring his options for selling other Receivership stock holdings.

Other high-priority potential sources of funds which the Receiver is currently exploring include the anticipated sale of properties located in Tangipahoa Parish, Louisiana,[1] believed to be worth in excess of $1 million; in excess of $700,000.00 in frozen, contested bank accounts for which forensic investigation and review is ongoing; and a confirmed and uncontested at least $1.9 million due under  a secured promissory note, with interest continuing to accrue. Additionally, there are roughly $450,000.00 in disputed funds currently held by Industrial and Commercial Bank of China Financial Services (ICBCFS), in accordance with the

---

[1] The Receiver anticipates that he will soon be making subsequent filings with the Court to secure the necessary authority to proceed with these sales.

Stipulation to Resolve ICBCFS's Motion to Amend the Order Appointing Receiver filed on September 8, 2020.

In addition to the above, the Receiver is in the process of having personal property of Smith appraised for possible resale, and has retained a private investigator to attempt to locate Smith's vehicle. Additionally, the Receiver presently believes that there may be viable causes of action held by Receivership Entities against certain third parties involved with Ms. Smith's business dealings.

The operations of the Receiver are outlined in further depth, by category, below.

### A.    General Legal Matters

Immediately following the Receiver's appointment, the Receiver, through Counsel, worked diligently to comply with the requirements of 28 U.S.C. § 754, which requires that a receiver, appointed in any civil action or proceeding involving property situated in different districts, "shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." *Id.* Given the breadth of the scheme involved and the uncertainties regarding the location of real and personal property in the United States, the Receiver sent out a Notice of the Filing of Complaint and Order Appointing Receiver, with the Complaint and Order Appointing Receiver attached, with all necessary filing fees,

to every other District Court in the United States for filing on July 2, 2020.[2] Where possible, and for the vast majority of courts, the filings were sent out via Federal Express overnight delivery. All of the Notices have been filed, with most having been electronically filed through CM/ECF and docketed by the courts by July 9, 2020. Likewise, with the assistance of his paralegal, the Receiver filed IRS Form 56's for the Receivership Parties on July 9, 2020.

### B.   Visits to Rittenhouse Apartment and Four Falls Office, and Collection of Valuable Belongings and Professional Equipment

Counsel for the Receiver, with the assistance of administrative staff, promptly made arrangements to visit Brenda Smith's Rittenhouse apartment and the Four Falls office space in Conshohocken within two (2) weeks of the entry of Receivership Order. During these visits, in addition to taking inventory of the personal belongings, furnishings, and equipment at both locations, Counsel secured numerous important documents from both properties, thumb drives from Smith's apartment, a share certificate in Greenbriar Capital Corp., held by CV Brokerage, and the title for Smith's vehicle. Administrative staff has since returned to the Four Falls office space to assist with the disposition of property, and is in the process of completing the removal of Smith's belongings from her Rittenhouse Apartment.

---

[2] Counsel for the Receiver had to communicate with the clerks of numerous courts with regard to questions and issues that arose in connection with the filings. Where possible and appropriate, these communications were delegated to administrative staff to handle.

Administrative staff has identified and secured potentially valuable furnishings, rugs, jewelry, and other personal effects in Smith's Rittenhouse apartment, which are being evaluated for possible resale and/or auction.[3] They also retrieved the keys to Smith's vehicle.

Additionally, IT staff from Conrad O'Brien personally retrieved server equipment from an Equinix data center in New Jersey. In addition to potentially significant monetary value, it is believed that this server equipment contains valuable information relevant to the operation of Smith's businesses and the potential location of assets. The Receiver is in the process of attempting to make arrangements for efficient, cost-effective and secure data storage and hosting of the data contained on the equipment, and will then likely seek permission from the Court to sell the equipment for the benefit of the Receivership Estate.

## C.   Initial Document Review and Investigation

The documents retrieved from Smith's apartment and Four Falls office space, both in paper and on flash drive, proved to be a valuable source of information with regard to the potential whereabouts of Receivership Assets, primarily through the identification of individuals and/or entities who either appear to have been recipients of Receivership Assets, who have had dealings with Smith

---

[3] Smith was given the opportunity to remove sentimental, personal effects with marginal resale value.

and/or the Receivership Parties, or who may otherwise possess valuable information in this regard. With the assistance of the Accountant and his Counsel, and through extensive file review of available records and documentation, the Receiver has thus far identified in excess of two hundred (200) non-Receivership individuals and/or entities which may possess Receivership Assets and/or valuable information regarding Receivership Assets, including, *inter alia*, other entities in which Brenda Smith may possess some degree of ownership and/or control, individuals and/or entities with whom Brenda Smith and/or the Receivership Entities have done business, former attorneys for the Receivership Entities and/or Smith, recipients of substantial funds from Receivership bank accounts, and banks and other financial institutions holding, or appearing to hold, Receivership Assets and/or accounts in the name of Receivership Entities.

### D.    Notices of Receivership

In addition to the Receivership Parties and certain governmental authorities, the Receiver sent notice of the Receivership and asset freeze to more than 200 individuals and/or entities identified through investigation and file review,[4] with commensurate document and/or asset turnover demands. All known parties

---

[4] Some of these notices have been returned. The Receiver continues to search for additional, alternative contact information for individuals and/or entities whose notice letters have been returned. Further, some individuals and/or entities had to be sent numerous letters before a response was received, and the Receiver continues his attempts to follow-up with those who have not yet responded.

currently in possession of Receivership Assets were advised not to liquidate, transfer, sell, convey, or otherwise transfer any Receivership Assets, except upon instructions from the Receiver. They have likewise been instructed not to exercise any form of set-off, alleged set-off, lien, or any other form of self-help, or to refuse to transfer funds or assets to the Receiver's control.

      As a result of these Notices, the Receiver, through his Counsel and/or Paraprofessionals, where appropriate, has conducted interviews and/or exchanged communications with many individuals and/or entities served with the Receivership Order, directly or through their counsel, many of which have turned over additional documents for review. In total, the Receiver is in possession of many terabytes of data.[5] The Receiver's review of documents and investigation continues, and additional parties are routinely identified for noticing and/or interview. It is anticipated that additional responses will be forthcoming, and that individuals and/or entities believed to possess either valuable information and/or Receivership Assets will continue to be identified and served with the Receivership Order and document and/or turnover requests, where appropriate, on a rolling basis.

---

[5] A terabyte is equivalent to 1,000 gigabytes.

### E.   Receivership Bank Account Opening and Collection of Funds and Documentation from Banks

Pursuant to the Receivership Order, the business manager at Conrad O'Brien arranged for the opening of a centralized Receivership Account with Bank of America ("Receivership Account"), where Receivership Assets could be deposited. The current balance of the Receivership Account is $1,141,525.37.  On August 28, 2020, $700 in cash from the sale of a safe in the Four Falls office, and $350.19 found in a coin jar in the office, were retrieved and transferred by Law Firm administrative staff to the Receivership Account. ICBCFS transferred $577,088.16 in uncontested funds to the account via wire on August 31, 2020. PNC Bank sent the Receiver $224,185.98 by check, and Citizens Bank sent a check for $7,297.77, which checks were deposited into the Receivership Account on September 2, 2020 and September 28, 2020, respectively. While Counsel has already received productions from PNC Bank and ICBCFS, Counsel is still waiting for additional productions from these entities, as well as the document production from Citizens Bank.

The Receiver is still awaiting responses from several other banks and financial institutions, many of which are overseas. Some institutions have advised that all accounts have been closed and that they are not in possession of Receivership funds. Others have refused to cooperate and/or turn over funds to the Receiver because they are not under the jurisdiction over the United States courts.

11

This has required the involvement of Counsel to attempt to obtain account information and communicate with these institutions, and may ultimately require the retention of local counsel if it is determined that there are sufficient assets held in such overseas accounts to justify the cost of doing so.

For example, the Receiver, through Counsel, attempted to secure Receivership Assets held in an account with Cidel Bank & Trust, Inc. ("Cidel"), which is headquartered in Barbados. Counsel attempted to obtain assistance in this regard from the Barbados AG's Office; however, on September 2, 2020, the Attorney-General advised that local counsel will need to be retained in order to compel compliance and effectuate the transfer of these funds from Cidel. Similarly, Standard Chartered Bank Singapore, which the Receiver believes may potentially hold Receivership Assets based upon his review of available documentation, will not provide any information or respond to the Receiver's document requests unless and until the Receivership Order is registered in the High Court of Singapore. Likewise, the New York branch of National Australia Bank has refused to even confirm the existence of any Receivership Accounts held with the institution, advising that such accounts would be held in Australia, rather than a local United States branch, and that retention of Australian counsel would be necessary to secure such information from the Bank. Although the Receiver has located a document suggesting the potential transfer of significant funds to an account held

12

with National Australia Bank, the Receiver is still attempting to investigate the legitimacy of this purported transaction before expending Receivership Assets in pursuit of funds in Australia that may or may not exist.

Counsel involvement was also required in connection with disputes that have arisen with ICBCFS with regard to two accounts holding clearing funds for CV Brokerage, in the amount of $444,213.08, where ICBCFS has claimed that it has a security interest in this balance, arising from claims which purportedly exceed the amount of the balance. After the exchange of numerous communications with regard to these disputed funds, ICBCFS filed a Motion to Amend the Order Appointing Receiver on August 25, 2020, which was ultimately resolved, following extensive negotiations, by Stipulation filed on September 8, 2020. In addition, due to ICBCFS' concerns regarding the confidential nature of certain documents requested by the Receiver, the parties agreed to enter into a stipulated protective order. Counsel for the Receiver drafted the Stipulated Protective Order, which was ultimately agreed upon and filed on September 10, 2020. ICBCFS has made two additional productions since the entry of the Stipulated Protective Order.

### F.    Louisiana Properties

Through his investigation, with the assistance of Counsel and his paralegal, the Receiver discovered four (4) parcels of property located in Tangipahoa Parish,

Louisiana, two of which are owned by Brenda Smith personally, and two of which are owned by BD of Louisiana, LLC. The Receiver's paralegal performed extensive research regarding the properties through the Recorder of Deeds and the Clerk of Courts, attempting to locate and identify any claims, lawsuits, liens and other encumbrances potentially affecting these properties. The Receiver was able to identify the mortgaging bank on the BD of Louisiana parcels, and promptly sent notice to the bank. Through these efforts, Counsel for the Receiver is now in contact with Counsel for the mortgaging bank.

Additionally, on July 6, 2020, the Receiver sent notice of the Receivership Order to the Recorder of Deeds of Tangipahoa Parish, and filed *lis pendens* notices with the Tangipahoa Parish Clerk of Courts for all four parcels on July 24, 2020. Through communications with, and documentation received from, Counsel for the mortgaging bank, as well as communications with the Tangipahoa Parish Sheriff's Office, the Receiver has learned that all four (4) Louisiana parcels were sold at a tax sale on June 30, 2020, for failure to pay taxes for the year 2019, as discussed further below. Tax sales are subject to a three-year redemption period, following which the tax purchaser can take possession of the property if redemption has not occurred.

Counsel for the Receiver communicated and coordinated with the Tangipahoa Parish Sheriff's Office to arrange for redemption of the four properties

through payment of the delinquent taxes and associated penalties. After the close of the quarter, the redemption checks were deposited by the Sheriff's Office on October 16, 2020. The Receiver is awaiting confirmation that the redemption process is complete.

The Receiver, through Counsel, has been in communication with Godwyn & Stone Real Estate ("Godwyn & Stone" or "Realtor") regarding the potential sale of the four parcels. The Realtor made arrangements for Abstracts to be completed for the parcels, in preparation for a possible sale. Counsel is now in the process of identifying and locating appraisers, with the assistance of Godwyn & Stone, and will seek appropriate approval from the Court to retain these professionals and pursue the sale of these properties. Brenda Smith's sister, Linda Smith, has confirmed in writing that Brenda Smith is not raising any objection to the sale of this land.

### G.    Search for Smith's Vehicle

At the direction of Counsel, administrative staff for the Law Firm has continued to search for Brenda Smith's vehicle, and has visited and communicated with numerous area garages attempting to locate it. After locating a parking receipt in Smith's apartment, the Receiver identified the last known location where the vehicle was last parked. However, the attorney for the garage has advised that the vehicle is no longer there. Therefore, the Receiver has retained a private

investigator to search for the vehicle. If located, the Receiver will seek authority to sell the vehicle for the benefit of the Receivership Estate.

### H.      Communications with Creditors, Investors, Debtors and Claimants

Counsel for the Receiver, as well as paralegal staff, where appropriate, have had numerous communications with various creditors, investors, debtors and claimants, largely through their counsel. Counsel has directed any known investors to complete the investor questionnaire on the Receivership website, and has also advised known and potential creditors of the creditor claim form on the website.

Counsel has communicated with numerous attorneys representing plaintiffs and/or co-defendants in related actions, particularly with regard to the stay and whether or not it should be lifted in connection with certain actions. The Receiver has not agreed to the lifting of the stay in any of these actions. After receiving such a request in connection with *Southern Minerals Group, LLC v. CV Investments LLC*, No. 2:20-cv-02643, pending in the Eastern District of Pennsylvania,  the Receiver, through Counsel, filed a Notice of Stay on August 4, 2020, attaching a copy of this Court's June 29, 2020 Receivership Order.

The Receiver and his Counsel remain in regular contact with counsel for Spouting Rock with regard to the repayment of a $1.9 million loan, plus interest, due and owing to Defendant, Broad Reach Capital, LP, which was the subject of the Interpleader Complaint filed by Spouting Rock in the United States District

Court for the District of New Jersey. *See Spouting Rock Holdings, LLC v. Broad Reach Capital, LP, et al.*, Civ. No. 20-cv-02498.  Spouting Rock has not yet made payment, but has advised that it is still in the process of taking steps to satisfy its obligation to the Receivership.

The Receiver has also been in communication with individuals claiming entitlement to funds held in certain disputed frozen accounts, and his retained accountants from Alvarez & Marsal Disputes and Investigations, LLC ("Accountant" or "Accountants") have been conducting forensic analyses for the purposes of evaluating these claims.

### I.        Brokerage Account Opening and Transfer of Stock Holdings

The Receiver has identified several Receivership holdings in publicly traded securities. Some of these securities either do not trade on the New York Stock Exchange, or only trade on the United States OTC market. The Receiver continues his efforts to identify additional stock holdings belonging to the Receivership Parties and/or which belong to entities that should be added as Receivership Parties.

Most significantly, after sending numerous letters and notices to Palantir Technologies ("Palantir") and Computershare, the Receiver located the stock holdings held by Prico Market LLC ("Prico") – a Receivership Party – with Computershare—which are believed to be of significant value. After learning of an

17

imminent initial public offering (IPO) for Palantir, the Receiver filed an

Emergency Motion to Retain a Wealth Management Firm and for Discretion to

Liquidate Receivership Holdings in Publicly Traded Securities on September 25,

2020. The Motion was granted on September 28, 2020, enabling the Receiver to

retain Terry Fant, CFP and Eric Geedey, of Raymond James, for the purpose of

opening a brokerage account to hold Receivership stock holdings, providing

financial guidance and advice to the Receiver with regard to the potential sale of

Receivership stock holdings, and coordinating and assisting with the potential sale

and/or liquidation of Receivership stock holdings. The Order grants the Receiver

discretion to sell Receivership holdings in publicly traded securities where he

believes, based upon the advice and guidance of Raymond James, that doing so

would maximize value for the Receivership Estate, and also authorizes the

payment of reasonable commissions to Raymond James in connection with such

sales.

      Opening the brokerage account and securing the conversion and transfer of

Prico's shares to the Receiver required the involvement of counsel due to the

complexity and unconventional nature of the transaction. Counsel for the Receiver

had numerous communications with Counsel for Palantir and Computershare, as

well as Raymond James, in an effort to arrange for the transfer of Prico's freed-up

shares to the Receiver. Through those efforts, after the close of the quarter, 36,000

of Prico's shares in Palantir were transferred to the Raymond James brokerage account, and were promptly sold at $9.4183 per share.[6] After payment of a small commission to Raymond James in accordance with this Court's September 28, 2020 Order, at the rate of 4 cents per share and other associated fees, this resulted in an infusion of $337,605.43 in cash into the Receivership Account on October 21, 2020.[7]

### J.     Investigation of Potential Claims

Counsel has communicated with various individuals and/or entities, either directly or through counsel, who received Receivership Assets and against whom the Receivership may possess potential claw-back claims. Investigation and document review continue in this regard, and once the Receiver has gathered necessary evidence and has made an evaluation of the costs and benefits of pursuing such claims, he will seek approval from the Court, where appropriate, to pursue claw-back actions where he believes doing so will be financially beneficial for the Receivership Estate.

---

[6] Pursuant to the terms of Palantir's initial public offering, shareholders of Class A Common Stock in Palantir were permitted to sell up to twenty percent (20%) of their shares in connection with Palantir's direct listing on the New York Stock Exchange. The remaining eighty percent (80%) of Prico's shares remain locked-up with Computershare. It is anticipated that this lock-up period will end sometime in the first quarter of 2021, at which point those remaining 144,000 shares should be eligible to be transferred to the brokerage account with Raymond James and then sold.

[7] There may be tax liabilities associated with this sale.

## III.   CASH ON HAND, ADMINISTRATIVE EXPENSES, AND UNENCUMBERED FUNDS

The Receiver has consolidated Receivership Assets from bank accounts held with Industrial and Commercial Bank of China Financial Services (ICBCFS), PNC, and Citizens Bank, as well as the proceeds from the sale of Prico's freed-up shares in Palantir into the Receivership Account. At the close of the quarter, the balance of the account was $808,872.10. As of October 22, 2020, the balance of that account is now $1,141,525.37,[8] and the Receiver hopes that there will be significant increases in the cash available in the coming months through the sale of Receivership property and stock holdings, which are among the Receiver's top short term priorities. The Receiver also believes that additional funds may be held with other banks, most of which are overseas and the Receiver will take steps to repatriate those funds where practical. The Receiver continues his investigation and collection efforts in this regard, which may ultimately require the retention of local counsel for the purpose of domesticating the Receivership Order in other countries. Any such action, however, would be subject to a cost-benefit analysis with regard to the estimated value of anticipated assets and the projected costs involved in securing same.

---

[8] This includes $860.30 of funds from Citizens Bank accounts held in the name of Brenda Smith.

In addition to the above, there is in excess of $700,000.00 of contested funds in frozen accounts for which forensic review is continuing, and a confirmed and uncontested at least $1.9 million due under a secured promissory note from Spouting Rock Holdings, LLC ("Spouting Rock"), with interest continuing to accrue.

The Receiver is currently exploring the potential liquidation of numerous assets, including additional Receivership holdings in publicly traded securities, as well as four parcels of real property located in Louisiana and owned by Brenda Smith and BD of Louisiana, LLC ("Louisiana properties"), some of which are subject to a mortgage. Prico Market LLC still holds an additional 144,000 shares in Palantir Technologies, which will likely be freed up for sale during the first quarter of 2021. It is believed that these remaining shares are worth in excess of $1 million,[9] and the BD of Louisiana property was appraised at in excess of $1 million several years ago. Therefore, it is preliminarily believed that even with payoff of the mortgage, the sale of that property will still result in a material influx of cash to the Receivership Estate. The Receiver is continuing to search for Brenda Smith's vehicle with the assistance of a private investigator, and plans to request permission to sell it once located. The Receiver anticipates that the liquidation of these assets will result in substantial increases of cash.

---

[9] This, however, depends upon the value of the shares at the time of sale.

The Receivership incurred administrative expenses of $750.00 from the Receivership Account through the quarter ending September 30, 2020, for payment to Title Management Group, Inc. for abstracts of the Louisiana properties. Additional administrative expenses have been incurred since the close of the quarter, including payment of $4,452.16 to the Tangipahoa Sheriff's Office for redemption of the Louisiana properties which were sold at a tax sale for failure to pay property taxes in 2019. Property taxes for 2020 have not yet been posted but will soon need to be paid. Additionally, since the Receiver intends to sell these properties, subject to the Court's approval, it is anticipated that there will be additional costs incurred in connection therewith, including, *inter alia*, the costs for appraisal and other associated fees. Additionally, the Receiver retained and paid $500.00 to private investigator Michael Mancuso of Searching for the Truth Investigations, to help locate Smith's vehicle. That payment was made after the close of the quarter as well. These Administrative Expenses were paid out of the Receivership Account.

**IV.    RECEIPTS AND DISBURSEMENTS**

Pursuant to Paragraph 68 of the Receivership Order, the schedule of the Receiver's receipts and disbursements, in the form of the Standardized Fund Accounting Report ("SFAR") as prescribed by the SEC, is attached hereto as Exhibit "A". Since this was the first quarter of the Receivership, the columns for

this quarterly period and the duration of the Receivership cover the same time period.

This schedule of receipts and disbursements does not include receipts and disbursements since the end of this quarter. Specifically, it does not include the receipt of $337,605.43 from the sale of 36,000 shares of Prico's Palantir stock, nor does it include the payment of $4,452.16 to the Tangipahoa Sheriff's Office for the redemption of the Louisiana properties or the payment of $500.00 to the private investigator. Rather, these receipts and disbursements from the Receivership Account will be reflected in the Receiver's next quarterly status report and accompanying SFAR.

## V.   RECEIVERSHIP ASSETS

While the Receiver is continuing his investigation and efforts to uncover additional assets, confirmed Receivership Assets remain limited, particularly in comparison to the vast liabilities the Receivership Entities face, including the $63+ million owed back to defrauded investors.

### A.   Receivership Bank Account

As set forth above, as of September 30, 2020, the balance of the Receivership bank account was $808,872.10. As of October 22, 2020, the balance of that account is now $1,141,525.37.

### B.    Stock Holdings

The Receiver confirmed the existence of the following Receivership stock

holdings:

- 180,000 shares in Palantir Technologies held by PriCo Market, LLC. The Receiver sold 36,000 shares of Class A Common Stock in Palantir on the New York Stock Exchange, and the remaining 144,000 are presently held with Computershare.

- 50,000 shares in Greenbriar Capital Corp, which is a Canadian company that trades on the Toronto Venture Exchange (GRB), and the United States OTC market (GEBRF). The Receiver is in the possession of the certificate issuing these shares to CV Brokerage.

- 932 shares of Tremor Int Ltd (TRMR), which trades on the London Stock Exchange. ICBCFS is currently in possession of these shares, and the Receiver is attempting to make arrangements for their transfer. The shares belong to CV Brokerage.

As discussed above, the remaining Palantir Stock held with Computershare is

expected to be freed up in the first quarter of 2021, at which point the Receiver will

seek to have them transferred to the brokerage account with Raymond James and

then liquidated. Raymond James is presently investigating options that may be

available to the Receiver for the liquidation of the Greenbriar and Tremor stock.

Additionally, the Receiver is still investigating the potential existence of  stock

holdings in Lyft, Inc. and Facebook, but does not yet have definitive information

with regard to these potential holdings.

24

### C.    Spouting Rock Receivable

On March 6, 2020, Spouting Rock Holdings, LLC, ("Spouting Rock") filed an Interpleader Complaint in the District Court for the District of New Jersey, concerning an obligation owed to Broad Reach Capital, LP.  (*See Spouting Rock Holdings, LLC v. Broad Reach Capital, LP, et al.*, Civ. No. 20-cv-02498). As set forth in the interpleader action, Spouting Rock owes payment of principal and interest on a secured promissory note, payable to Defendant, Broad Reach Capital, LP. As of the date of the filing of the Interpleader Complaint, the amount owed was $1,900,931.51, with interest continuing to accrue. At the request of the SEC and in consultation with the Receiver, Spouting Rock withdrew the interpleader complaint shortly after the appointment of the Receiver and does not dispute that payment is owed to the Receivership Estate under the terms of the note. Spouting Rock acknowledges its obligation to the Receivership, and has represented that it is making efforts to satisfy these obligations in a timely fashion.

### D.    Louisiana Properties

As discussed above, the Receiver has located four (4) parcels in Tangipahoa Parish, Louisiana, which are part of the Receivership Estate, as follows:

- Assessment No. 3418405, Davis Road (BD of Louisiana LLC)
- Assessment No. 4104900, Adams Road (BD of Louisiana LLC)
- Assessment No. 5615305, 17091 Highway 1064 East (Brenda Smith)
- Assessment No. 6157491 (Brenda Smith)

25

One property, made up of two contiguous parcels, is owned by BD of Louisiana, and another property, owed by Brenda Smith, is made up of the other two contiguous parcels. Three of the properties appear to be undeveloped raw land, while, according to internet research, the fourth parcel may have a small home or similar structure as well as a registered mailing address.

The adjacent parcels owned by BD of Louisiana, LLC ("BD of Louisiana Property"), were purchased for $850,000 in 2008. A 2017 appraisal valued the property at in excess of $1 million. The property is subject to a mortgage from B1 Bank, which had a maturity date of June 25, 2019. As of August 2019, the balance of the mortgage was approximately $345,000.00, with interest continuing to accrue. The Receiver is not aware of any mortgage with regard to the two contiguous parcels owned by Brenda Smith individually ("Smith Property"), but believes that the Smith property is of significantly lower value than the BD of Louisiana Property.

As noted, the four parcels were sold at tax sales on June 30, 2020 for 2019 tax delinquencies. The Receiver had to redeem these properties for a total payment of taxes and penalties in the amount of $4,452.16, which payment took place after the close of the quarter ending on September 30, 2020.  2020 property taxes will soon become due and owing.

The Receiver believes that the sale of these properties has the potential to generate proceeds to benefit the Receivership Estate, and, as noted, Smith does not object to the sale of these properties. The Receiver intends to work with Godwyn & Stone Real Estate in Metairie, Louisiana in connection with the sale of these properties, which already made arrangements for title abstracts to be completed. The Receiver is in the process of locating appraisers, and anticipates that he will soon file motions with the Court for approval to formally retain these real estate professionals and begin the liquidation process, pursuant to the Receivership Order and applicable federal law.

### E.    Additional Bank Accounts and Funds

It is estimated that there is in excess of $700,000.00 in frozen, contested accounts in the name of Awooton Consulting, Rybicki Capital Partners LLC and Taylor Trading LLC. Forensic analysis and investigation is ongoing to ascertain whether these funds rightfully belong to the Receivership Estate.

As outlined above, ICBCFS holds two additional accounts that are purported to be clearing accounts for CV Brokerage, containing $444,213.08, which funds have not been turned over to the Receiver, as ICBCFS is claiming that it has a perfected lien in connection with indemnification claims that exceed this balance. Pursuant to the Stipulation to Resolve ICBCFS' Motion to Amend the Amended Order Appointing Receiver, ICBCFS is entitled to maintain possession and control

of the balance in these accounts until (i) the amount and priority of the ICBCFS Claim, (ii) the validity and priority of ICBCFS's lien on the Balance and (iii) ICBCFS's right to set off the Balance against the allowed ICBCFS Claim are determined by entry of a final order of the Court. ICBCFS is otherwise bound to comply with all other terms of the Receivership Order.

Cidel Bank in Barbados has confirmed that it holds under $13,000.00 in Receivership Assets. However, the Receiver has been advised that he must retain local counsel in order to get the Receivership recognized and get access to these funds. The Receiver believes that additional funds may be held in other overseas banking institutions, but is getting minimal cooperation from banks outside the jurisdiction of the United States courts. The Receiver is investigating and contemplating all reasonable and cost-effective options for gaining easier access to overseas funds, including potentially seeking to have the Receivership Order formally recognized in the United Kingdom, and possibly seeking to retain formal control over CV International Investments Limited, PLC, which is the account holder for a majority of the potential overseas accounts. The Receiver is considering retaining counsel in the United Kingdom in order to further explore his options in this regard.

### F.    Additional Business Entities

Based upon records and documentation collected by the Receiver from Brenda Smith's apartment and the Four Falls office space occupied by one or more Receivership Entities, it is believed that Brenda Smith and/or the Receivership entities may have an ownership interest in numerous other overseas and/or domestic entities that are not currently part of the Receivership Estate. The Receiver has sent notice and a copy of the Receivership Order to all such potential entities for which an address could be located, and will continue to investigate the existence, and value of, Brenda Smith's other potential ownership interests and/or other entities which should be added as additional parties to the Receivership.

### G.    Vehicle

Brenda Smith's 2017 Infiniti QX70 remains unaccounted for. Assuming the vehicle can be located with the assistance of the private investigator, the Receiver hopes to secure possession of the vehicle and then sell it, with Court approval, for the benefit of the Receivership Estate.

### H.    Magnetite

Based upon his investigation, the Receiver believes that Brenda Smith is no longer in possession of any magnetite concentrate. The Receiver believes that the magnetite owned by Smith has since been sold or disposed of by third parties. The

Receiver is exploring the possibility of claims in connection with the disposition of this property, for which Smith paid substantial funds.

### I.  Personal Property

As noted in the Receiver's Initial Preservation Plan, it appears that, to the extent Smith maintained any personal property of significant value at her apartment –e.g. expensive jewelry, fine art, etc., it is likely that most of these items were removed from the property prior to the Receiver's appointment. Although a few potentially valuable pieces of jewelry were found at the apartment, a Rolex watch found at the Four Falls office space was appraised and determined to be fake. Administrative staff at Conrad O'Brien has identified and secured furnishings, rugs, electronic equipment, and various pieces of jewelry and other personal effects in Smith's Rittenhouse apartment, and is in the process of attempting to have them evaluated for potential sale and/or auction. The Receiver will continue to explore the option of selling any marketable items that appear to have significant resale value, for the benefit of the Receivership Estate.

### J.  Office Items

The Four Falls Office space Brenda Smith utilized to run her various businesses contained basic office equipment which the Receiver has determined has no value to the Receivership after consulting with several auction / estate-sale companies with experience in second-hand office equipment.  Accordingly, the

Receiver has agreed to abandon the office equipment to the landlord in exchange for a release agreement.

While there was little to no valuable computer equipment maintained in the Four Falls office space, the Receiver did recover potentially valuable offsite server equipment from a data center that hosted Brenda Smith's equipment.

As noted in the Receiver's Initial Preservation Plan, the following equipment has been identified and retrieved:

- Cisco ASA 5525-x, quantity 2
- Cisco 3750 PoE 48, quantity 1
- QNAP Storage Device, quantity 1
- Dell Server, ST 8MZTLM1
- HP DL360 Gen9 S/N MXQ629093R
- HP DL360 Gen9 S/N MXQ629092R
- Cisco Nexus 3548P, quantity 2
- QNAP Model TS-EC1280U-RP
- Cisco UCS-FI-6332, quantity 2
- Cisco UCS 5108 S/N FOX2023GE8F
- Pure Storage Flash Array, quantity 1

After necessary data has been transferred from this equipment onto a secure data storage and hosting platform, the Receiver will attempt to ascertain its possible resale value and seek approval from the court to sell the equipment, if warranted.

### K.    Insurance

After communicating with Smith's insurance agent, the Receiver has learned that Brenda Smith and/or some of the Receivership Parties may have had insurance with Liberty Mutual. The Receiver has served Liberty Mutual with a copy of the

31

Receivership Order and document requests. Once received, the Receiver will review these policies to see whether any potential insurance coverage may be available in connection with this matter and the investor and creditor claims. The Receiver will continue to investigate and pursue any other leads he receives with regard to other potentially applicable insurance coverage and/or fidelity bonds.

## VI.  LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY RECEIVERSHIP ESTATE

The Receiver's review of available records indicates that the Receivership may hold claw-back claims against individuals and/or entities that received gifts, donations or other fraudulent transfers from Smith or the other Receivership Entities. The Receiver is analyzing whether there are potential claw-back claims against net winner investors. The Receiver will also investigate whether any potential causes of action may exist with regard to individuals and/or entities that possess, or possessed and sold certain Receivership Assets for their own pecuniary benefit, and/or which enabled or were complicit in the conduct alleged in the SEC Complaint. To the extent any such causes of action are warranted, the Receiver would seek Court approval to proceed with litigation, consistent with his June 29, 2020 Order of appointment.

Of note, based upon initial review of documents and preliminary forensic analysis, it appears that many individuals and/or entities received substantial sums of money from Smith and/or the Receivership Entities, potentially without any

meaningful benefit being provided in return. With the assistance of his Accountants, the Receiver is thoroughly investigating all such substantial and potentially fraudulent transfers. For recipients who cannot provide meaningful documentation and proof with regard to the goods, services, or other benefits conferred to Smith and/or the Receivership Parties in exchange for these funds, and where a cost-benefit analysis leads the Receiver to believe that bringing a lawsuit against such individuals and/or entities would be financially beneficial to the Receivership Estate, he will seek the necessary approval from this Court to pursue such claims.

## VII.   CREDITORS

As discussed above, ICBCFS claims that it has indemnification claims worth in excess of the $444,213.08 in withheld funds held in the CV Brokerage clearing deposit account(s), primarily in connection with its defense of two FINRA arbitration actions in which it was named alongside Smith and/or CV Brokerage, which are discussed further below. Those arbitrations have not yet concluded; therefore, the viability and extent of ICBCFS' claims have not yet been determined. ICBCFS has produced numerous documents in connection with their claims, which the Receiver is in the process of reviewing, and which will likely need to be supplemented to allow for a full and final assessment.

As discussed in the Receiver's Initial Preservation Plan, Southern Minerals Group, LLC ("SMG") pursued an arbitration action against CV Investments LLC (CVI) in connection with its purported breach of a Magnetite Concentrates Purchase and Sale Agreement ("PSA"), under which CVI was to purchase up to 400,000 tons of magnetite concentrate for the price of $80.00 per ton, with a minimum monthly purchase of 4,000 tons. Upon information and belief, CVI did not actually receive any magnetite for which it failed to pay; rather, it failed to purchase the full amount of magnetite required by the PSA.  It is further believed that some of the magnetite paid for by CVI was retained by SMG.

On May 29, 2020, the Arbitrator in that matter entered an award against CVI and in favor of SMG on all claims, and awarded damages and costs as follows: $4,215,000 in liquidated damages as of March 1, 2020, $14,080,599 in lost profits, $3,600,000 in punitive damages, $23,660 in arbitration costs, prejudgment and post-judgment interest of 15% on all liquidated damages, and post-judgment interest of 15% on all other damages and costs. On June 5, 2020, Counsel for SMG filed a Petition for Order Confirming Arbitration Award in the District Court for the Eastern District of Pennsylvania in *Southern Minerals Group, LLC v. CV Investments LLC*, No. 2:20-cv-02643. On August 4, 2020, the Receiver, through Counsel, filed a Notice of Stay in that action, attaching a copy of this Court's June 29, 2020 Receivership Order.

The Receiver set forth his understanding of the procedural history of that arbitration in his Initial Preservation Plan, which SMG is disputing, as evidenced by a status letter filed by Counsel for SMG in this matter on September 23, 2020. The Receiver has taken note of SMG's position and will take it under consideration in recommending a claims procedure to the Court at the appropriate time when the Receivership has marshalled sufficient assets for a meaningful distribution.

Also proceeding in the District Court for the Eastern District of Pennsylvania is the matter of *Surefire Dividend Capture, LP v. Smith et al.*, No. 2:19-cv-04088, against Smith and numerous other Receivership Entities, as well as non-Receivership parties. Pursuant to the June 29, 2020 Receivership Order, the claims against Smith and all Receivership Entities were stayed, with a carve-out allowing the other claims against third parties in both that and a pending arbitration matter—*Surefire Dividend Capture, LP v. Broad Reach Capital, LP, Broad Reach Capital, LLC, Bristol Advisors, LLC and Brenda Smith*, JAMS Demand for Arbitration, Index No. 1450006353—to proceed, subject to certain conditions. However, on July 21, 2020, the *Surefire* litigation was temporarily stayed in its entirety, following the submission of briefs by the parties addressing the effect of the stay in this matter on that litigation.

There is another matter proceeding in the Superior Court of the State of California against numerous Receivership and non-Receivership entities, in

35

*Innovative Fund I, L.P. v. Heckler et al.*, No. 30-2019-01053812-CU-FR-CJC (Ca. Super. Orange Cty.). TA1, LLC was one of the original named defendants in that matter when it was originally filed on July 30, 2019. On or about September 25, 2019, after Smith's arrest, the Complaint was amended to name Smith and Broad Reach Capital, LP, as well as CV Fund Administration, LLC as additional defendants. On February 4, 2020, the plaintiff in that matter requested an entry of default against these defendants. Smith thereafter attempted to file an answer, which was rejected, but her request for waiver of court fees was granted on May 28, 2020. The Plaintiff in that matter filed a notice of the Receivership Order and resulting stay on July 28, 2020.

The Receiver identified another civil action initiated against Brenda Smith, as well as CV Fund Partners LLC, CV Special Opportunity Fund LP, and George Heckler in the Court of Common Pleas of Montgomery County on or about July 8, 2020, in the matter of *Williams v. Smith, et al.*, No. 2020-11338. The matter was initiated by the filing of a writ of summons. The Receiver is not aware of the status of service on the defendants, and there is nothing else appearing on the docket.

In addition to the above proceedings, the Receiver is aware of at least two pending FINRA arbitrations, including *Alpha Capital Trading Group, LLC v. CV Brokerage, Inc. et al.*, (FINRA Arbitration No. 19-03157) and *Jeffrey Bydalek v.*

*Brenda Smith and CV Brokerage et al.* (FINRA Arbitration No. 18-03955). These matters have both been stayed. The Receiver is aware of the nature and amount of the various alleged claims and counterclaims involved in these arbitrations, and intends to further evaluate these claims in connection with creditor claim proceedings.

The Receiver believes that there are likely other pending actions and/or judgments against Smith and/or other Receivership Parties. The Receiver will seek to stay any such pending actions of which he becomes aware, in accordance with the June 29, 2020 Receivership Order.

## VIII.  STATUS OF CREDITOR CLAIMS PROCEEDINGS

In anticipation of numerous creditor claims against the Receivership Estate, the Receiver has created a creditor claim form to document all such claims being made against the Estate. The creditor claim form has been published on the Receiver's website, at http://broadreachreceiver.com/index.html, and the Receiver is in the process of notifying known and potential creditors to visit the site to complete claim forms.

The Receiver has been made aware of several claims against the Receivership Estate, as outlined above, which he is in the process of evaluating. However, it is believed that there remain additional creditors about which the Receiver is not yet aware, and the Receiver continues his review of voluminous

records and documents, and anticipates that additional fact investigation will lead to the identification of additional creditors.

As set forth above, the Receiver's primary focus, at this time, is locating and securing tangible Receivership Assets and engaging in activities that will be most likely to generate proceeds for the Receivership Estate. Because the Receiver is still in the process of securing material funds for the Receivership Account, the Receiver has deferred developing a claims determination and distribution process. There are, at present, insufficient funds available to pay creditor claims. When appropriate, the Receiver will formulate a creditor claims procedure for review and approval by the Court.

## IX. RECEIVER'S RECOMMENDATIONS FOR CONTINUATION OR DISCONTINUATION OF THE RECEIVERSHIP

The Receiver recommends the continuation of the Receivership at this time. The Receiver anticipates bringing in significant additional funds in the near-term, through the sale of additional stock holdings, the sale of real estate and receipt of the $1.9 million plus interest on the secured promissory note from Spouting Rock. Once the Receiver has secured these additional funds, and has had an opportunity to complete his review of the extensive data and documents available—primarily from the server equipment, the Receiver will be in a better position to evaluate and make recommendations regarding the pursuit of additional funds through litigation and/or the winding up of the Receivership. At this time, given the ongoing nature

of the Receivers' investigation, the Receiver does not have a projected date by which he expects the Receivership to close.

## X.   CONCLUSION

The Receiver, Kevin D. Kent, Esq., hereby respectfully submits this First Quarterly Status Report for the Court's review consideration. The Receiver anticipates providing additional informational updates in subsequent quarterly status reports, as additional assets and/or liabilities are identified.


Respectfully Submitted,

Date:  10/30/20                          *s/ Robin S. Weiss*

Robin S. Weiss, Esq.
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: (215) 864-9600
Facsimile: (215) 864-9620
E-mail: rweiss@conradobrien.com

Andrew S. Gallinaro, Esq.
Conrad O'Brien PC
1500 Market Street, Suite 3900
Centre Square, West Tower
Philadelphia, PA 19102
Phone: (215) 864-8083
Facsimile: (215) 864-7403
E-mail: agallinaro@conradobrien.com

# EXHIBIT "A"

Kevin Dooley Kent
1500 Market Street, Suite 3900
Philadelphia, PA 19102
(215) 864-9600

# STANDARDIZED FUND ACCOUNTING REPORT

## CIVIL – RECEIVERSHIP FUND

Brenda Smith, Broad Reach Capital, LP, Broad Reach Partners,
LLC, and Bristol Advisors, LLC
Civil Action No.: 2:19-cv-17213-MCA-ESK

REPORTING PERIOD 06/29/2020 TO 09/30/2020

**STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Broad Reach Capital Receivership Entities - Cash Basis**
Receivership; Civil Court Docket No. 2:19-CV-17213-MCA-ESK
REPORTING PERIOD 06/29/2020 TO 9/30/2020

| FUND ACCOUNTING (See Instructions): | Current Reporting Period - 06/29/20 to 09/30/20 | | | 06/29/20 - 09/30/20 |
|---|---|---|---|---|
| | Detail | Subtotal | Period Total | Case to Date |
| **Line 1** Beginning Balance (As of 6/29/20) | | | $ - | $ - |
| *Increases in Fund Balance:* | | | | |
| **Line 2** Business Income | | | - | |
| **Line 3** Cash and Securities | | | 808,922.10 | 808,922.10 |
| **Line 4** Interest/Dividend Income | | | - | |
| **Line 5** Business Asset Liquidation | | | 700.00 | 700.00 |
| **Line 6** Personal Asset Liquidation | | | - | - |
| **Line 7** Third-Party Litigation Income | | | - | - |
| **Line 8** Miscellaneous - Other | | | - | - |
| Total Funds Available (Lines 1 – 8): | | | $ 809,622.10 | $ 809,622.10 |
| *Decreases in Fund Balance:* | | | | |
| **Line 9** Disbursements to Investors/Claimants | | | - | - |
| **Line 10** Disbursements for Receivership Operations | | | 750.00 | 750.00 |
| *Line 10a* Disbursements to Receiver or Other Professionals | | | - | |
| *Line 10b* Business Asset Expenses | | | 750.00 | |
| *Line 10c* Personal Asset Expenses | | | - | |
| *Line 10d* Investment Expenses | | | - | |
| *Line 10e* Third-Party Litigation Expenses | | | | |
| 1. Attorney Fees | | | - | |
| 2. Litigation Expenses | | | - | |
| Total Third-Party Litigation Expenses | | | - | |
| *Line 10f* Tax Administrator Fees and Bonds | | | - | |
| *Line 10g* Federal and State Tax Payments | | | - | |
| Total Disbursements for Receivership Operations | | | $ 750.00 | $ 750.00 |
| **Line 11** Disbursements for Distribution Expenses Paid by the Fund: | | | - | - |
| *Line 11a* Distribution Plan Development Expenses: | | | | |
| 1. Fees: | | | | |
| Fund Administrator | | | - | |
| Independent Distribution Consultant (IDC) | | | - | |
| Distribution Agent | | | - | |
| Consultants | | | - | |
| Legal Advisers | | | - | |
| Tax Advisers | | | - | |
| 2. Administrative Expenses | | | - | |
| 3. Miscellaneous | | | - | |
| Total Plan Development Expenses | | | - | |
| *Line 11b* Distribution Plan Implementation Expenses: | | | | |
| 1. Fees: | | | | |
| Fund Administrator | | | - | |
| IDC | | | - | |
| Distribution Agent | | | - | |
| Consultants | | | - | |
| Legal Advisers | | | - | |
| Tax Advisers | | | - | |
| 2. Administrative Expenses | | | - | |
| 3. Investor Identification: | | | | |
| Notice/Publishing Approved Plan | | | - | |
| Claimant Identification | | | - | |
| Claims Processing | | | - | |
| Web Site Maintenance/Call Center | | | - | |
| 4. Fund Administrator Bond | | | - | |
| 5. Miscellaneous | | | - | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | - | |
| Total Plan Implementation Expenses | | | - | |
| Total Disbursements for Distribution Expenses Paid by the Fund | | | $ - | $ - |
| **Line 12** Disbursements to Court/Other: | | | - | - |
| *Line 12a* Investment Expenses/Court Registry Investment System (CRIS) Fees | | | - | |
| *Line 12b* Federal Tax Payments | | | - | |
| Total Disbursements to Court/Other | | | $ - | $ - |
| Total Funds Disbursed (Lines 9 – 11): | | | $ 750.00 | $ 750.00 |
| **Line 13** Ending Balance (As of 09/30/20): | | | $ 808,872.10 | $ 808,872.10 |
| **Line 14** Ending Balance of Fund – Net Assets: | | | | |
| *Line 14a* Cash & Cash Equivalents | | | 808,872.10 | 808,872.10 |
| *Line 14b* Investments | | | - | - |
| *Line 14c* Other Assets or Uncleared Funds | | | - | - |
| Total Ending Balance of Fund – Net Assets | | | $ 808,872.10 | $ 808,872.10 |

STANDARDIZED FUND ACCOUNTING REPORT for Consolidated Broad Reach Capital Receivership Entities - Cash Basis
Receivership; Civil Court Docket No. 2:19-CV-17213-MCA-ESK
REPORTING PERIOD 06/29/2020 TO 9/30/2020

| | OTHER SUPPLEMENTAL INFORMATION: | Current Reporting Period - 06/29/20 to 09/30/20 | | | 06/29/20 - 09/30/20 |
|---|---|---|---|---|---|
| | | Detail | Subtotal | Period Total | Case to Date |
| | **Report of Items NOT To Be Paid by the Fund:** | | | | |
| | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** | | | | |
| Line 15 | | | | | |
| Line 15a | *Plan Development Expenses Not Paid by the Fund:* | | | $ - | $ - |
| | 1. Fees: | | | | |
| | Fund Administrator | | | - | |
| | IDC | | | - | |
| | Distribution Agent | | | - | |
| | Consultants | | | - | |
| | Legal Advisers | | | - | |
| | Tax Advisers | | | - | |
| | 2. Administrative Expenses | | | - | |
| | 3. Miscellaneous | | | - | |
| | *Total Plan Development Expenses Not Paid by the Fund* | | | $ - | |
| Line 15b | *Plan Implementation Expenses Not Paid by the Fund:* | | | | |
| | 1. Fees: | | | | |
| | Fund Administrator | | | - | |
| | IDC | | | - | |
| | Distribution Agent | | | - | |
| | Consultants | | | - | |
| | Legal Advisers | | | - | |
| | Tax Advisers | | | - | |
| | 2. Administrative Expenses | | | - | |
| | 3. Investor Identification: | | | - | |
| | Notice/Publishing Approved Plan | | | - | |
| | Claimant Identification | | | - | |
| | Claims Processing | | | - | |
| | Web Site Maintenance/Call Center | | | - | |
| | 4. Fund Administrator Bond | | | - | |
| | 5. Miscellaneous | | | - | |
| | 6. FAIR Reporting Expenses | | | - | |
| | *Total Plan Implementation Expenses Not Paid by the Fund* | | | $ - | |
| Line 15c | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | - | |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | - | |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** | | | - | - |
| Line 16a | *Investment Expenses/CRIS Fees* | | | - | - |
| Line 16b | *Federal Tax Payments* | | | - | - |
| Line 17 | **Total Disbursements to Court/Other Not Paid by the Fund:** | | | - | - |
| | **DC & State Tax Payments** | | | - | - |
| Line 18 | **No. of Claims:** | | | $ - | $ - |
| Line 18a | # of Claims Received This Reporting Period | | | | - |
| Line 18b | # of Claims Received Since Inception of Fund | | | | - |
| Line 19 | **No. of Claimants/Investors:** | | | | |
| Line 19a | # of Claimants/Investors Paid This Reporting Period | | | | - |
| Line 19b | # of Claimants/Investors Paid Since Inception of Fund | | | | - |

Receiver:

By: *[signature]*
      (signature)

      *Kevin Dooley Kent*
      (printed name)

      *Receiver*
      (title)

Date: *10/30/20*

2

**NOTES TO THE STANDARDIZED FUND ACCOUNTING REPORT**

**Receivership Cash Accounts**

As of September 30, 2020, the Receiver's cash balance of $808,872.10 was maintained in a checking account at Bank of America.

**Investments, Real and Personal Property**

The Receiver is in the process of identifying and liquidating all of the investments, real and personal property of the Receivership Parties. In addition to the transactions reflected within the Standardized Fund Accounting Report, the Receivership has an interest in the following securities valued using per share closing prices as of September 30, 2020:

| Investment | Symbol | Shares | Approximate Value as of 09/30/2020[A] |
|---|---|---|---|
| Palantir Technologies Inc | PLTR | 180,000 | $ 1,710,000.00 |
| Greenbriar Capital Corp | GRB.V | 50,000 | $ 74,305.64 |
| Tremor International Ltd | TRMR | 932 | $ 2,239.27 |

[A] Certain investments are traded on foreign exchanges.  Values converted to USD using historical exchange rates published at x-rates.com.

Additionally, the Receivership has an interest in four parcels in Tangipahoa Parish, Louisiana.  The Receiver is in the process of determining the value of these properties.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**BRENDA SMITH, BROAD REACH CAPITAL, LP, BROAD REACH PARTNERS, LLC, and BRISTOL ADVISORS, LLC,**

**Defendants.**

C. A. No. 2:19-cv-17213 (MCA)

**CERTIFICATE OF SERVICE**

I hereby certify, this 30th day of October, 2020, that I caused to be served a true and correct copy of the Receiver Kevin D. Kent's First Quarterly Status Report, through counsel of record by electronic filing pursuant to Fed.R.Civ.P. 5(b), and upon Defendant, Brenda A. Smith, on behalf of all defendants, via first-class mail, postage prepaid, as follows:

Brenda A. Smith
Permanent ID 2019-339640
CCIS# 07-571432
U.S. Marshalls Number 72832-050
Essex County Correctional Facility
354 Doremus Avenue
Newark, NJ 07105

*s/ Robin S. Weiss*
Robin S. Weiss, Esq.
*Attorney for Receiver, Kevin D. Kent, Esq.*